## HENRY L. STAFFORD v. HENRY LAUVER.

1. TAX SALE, *Time of Making.* Under the tax law in force in 1862, tax sales were required to be made on the second Tuesday of May and the succeeding days; but if the treasurer unavoidably omitted or failed to sell at that time, he was authorized to sell on the second Tuesday of September.

2. ——— *Recitals in Deed.* It was not necessary to the validity of the deed that it should contain a recital that such sale was made in September because of the unavoidable omission or failure to sell in May. (*Hobson v. Dutton*, 9 Kas. 477.)

3. PUBLIC OFFICERS — *Duty — Presumption.* The presumption of law, in the absence of evidence to the contrary, is that public officers perform the duties devolving upon them.

4. TAX-SALE CERTIFICATES — *Assignment.* Under the tax law in force in September, 1868, it was the duty of the county clerk to assign and transfer certificates of the sales of lands for taxes which had theretofore been made to the county.

5. TAX DEED, *Not Void on Face.* The recitals of the tax deed in question examined, and it is *held* that, under the facts and circumstances of the case, it is not void upon its face.

### Error from Miami District Court.

ACTION to quiet title to certain land. Judgment for plaintiff, *Lawver,* at the February term, 1889. The defendant, *Stafford,* brings the case to this court.

*Jno. C. Sheridan,* for plaintiff in error:

This tax deed is absolutely void on its face because no law was in force September 2, 1862, authorizing a sale of lands for taxes at the alleged time of sale mentioned. The law then required sales to be made on the first Tuesday in May and next succeeding days, except in certain cases, none of which are shown to be applicable to this case. Comp. Laws of 1862, ch. 197, §§ 36, 70. The tax deed is also void on its face because it does not show that the county treasurer gave notice that the certificate was presented, that the assignee or any one paid the taxes of 1861, that the proper officer assigned the certificate, or that several other facts necessary and essential to pass title by tax proceedings had been observed. *Duncan v. Gillette,* 37 Kas. 156; Comp. Laws of 1862, ch. 197, § 44. The deed recites that the "clerk" assigned the certificate, but the law then required the treasurer to assign it. *Sapp v. Comm'rs of Brown Co.,* 20 Kas. 243.

If the tax deed is void on its face, although the statute of limitations will never run in its favor, (*Waterson v. Devoe,* 18 Kas. 223; *Coonradt v. Myers,* 31 id. 30; *Leitzbach v. Jackman,* 28 id. 524,) the tax-title purchaser may compel the execution (if the facts will warrant it) of a deed regular and valid on

its face; or he may take possession and rest secure till his title is challenged, and then have his lien declared; or he can, within two years, get his money and 10 per cent. from the county; or within the same time he can sue the original owner, and, on his tax title being set aside, can have his lien declared as aforesaid.

The rights and remedies of tax-title purchasers in Kansas are very clearly defined in *Coonradt v. Myers,* 31 Kas. 33, 34:

"Whatever payments of taxes are made upon the theory of a purchase and a claim of title, and, until that claim of title is adjudged defective in some appropriate action, the purchaser can have no adjudication of a lien and no recovery of the taxes he has paid, and when it is adjudged defective he is entitled to recover all taxes paid. The legislature has placed no restriction and no other limitation. The ordinary statutes of limitation have no application to these proceedings."

*J. A. Hoag,* for defendant in error:

We maintain that the deed is not void upon its face. That the land was subject to taxation in the year 1861, is shown by the patent offered in evidence by the defendant, Stafford. It bears date October 1, 1858. There is no claim or pretense that the taxes were ever paid or the land redeemed from that sale. The deed recites that the sale took place September 2, 1862, and it is claimed that a sale at that date was illegal. It is true that the regular tax sale in the year 1862 was on the first Tuesday of May. Comp. Laws of 1862, ch. 197, §36. But § 70 of said chapter provides as follows:

"That if any county treasurer shall unavoidably omit or fail to sell any lands or town lots for unpaid taxes on the first Tuesday of May, he shall advertise and sell such land or town lots on the first Tuesday in September next ensuing, and such advertisement and sale shall conform in all respects to the provisions of this act, and shall be as binding and valid as like sale made on the first Tuesday of May."

The first Tuesday in September, 1862, was September 2.

It is claimed that the deed should recite that the treasurer unavoidably omitted and failed to sell the land on the first

Tuesday of May, 1862. That is not necessary. *Hobson v. Dutton*, 9 Kas. 477. It will be presumed that the treasurer did his duty. *Washington v. Hosp*, 43 Kas. 324.

The deed recites that on the 9th day of September, 1868, the tax-sale certificate was assigned by the county clerk, and it is claimed that the clerk had no authority at that date to sign it. Section 148 of chapter 107 of General Statutes of 1868 shows that the tax law of that year took effect March 15, 1868. General Statutes of 1868, p. 1064, § 148. Section 145 of that chapter reads as follows:

"Sec. 145. That all certificates of sale of lands heretofore made to the respective counties and in the charge of the county treasurer shall be, by said treasurer, delivered to the county clerk, who is hereby authorized to transfer or assign the same, in the same manner, on the same conditions as certificates issued under the provisions of this act." Gen. Stat. of 1868, p. 1063, § 145.

Daniel Childs was county clerk of Miami county on the 9th day of July, 1869, and had authority to make the deed. Therefore we claim that the deed is valid. The deed was filed for record in the office of the register of deeds of Miami county July 9, 1869, and was duly recorded in book "G" of deeds, at page 212. It vested in the grantee the absolute title to the land in fee simple. *Harris v. Curran*, 32 Kas. 580.

If the statute did not commence to run at the date of the recording of the tax deed, it commenced when actual possession was taken of the land, and the improvement of it was commenced under that title, which was not later than the spring of 1872, as shown by the testimony. In either case, the period of limitations had time to completely bar any claim to ownership of the land under the original title. *Jordan v. Kyle*, 27 Kas. 190; *Patterson v. Carruth*, 13 id. 494. Under the circumstances in this case, the tax deed should be liberally construed. *Sanger v. Rice*, 43 Kas. 580. The title of the defendant in error cannot be overthrown by evidence not contained within or upon the face of the deed. *Edwards v. Sims*, 40 Kas. 235.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action to quiet the title of a tract of land in Miami county in Henry Lauver as against the claim of Henry L. Stafford. Lauver founds his claim of title upon a tax sale made September 2, 1862, for the taxes of the preceding year. There being no purchasers, the land was bid off by the county treasurer in the name of Miami county. In 1869 a tax deed was executed by the county clerk to John Hindman, who conveyed the land to James McDermott on March 14, 1871. He in turn conveyed the land to Dennis O'Connell on March 1, 1877. O'Connell conveyed it to the plaintiff below on July 20, 1878. Each of these conveyances was in due form and properly recorded. Actual possession of the land had been taken by McDermott in the spring of 1872, and permanent improvements were made thereon, and that possession has been retained ever since. Stafford appears to have a complete title from the United States to him, except as to the tax title which has been mentioned. The patent of the United States was issued in 1858, and the patentee conveyed the same to David S. Green in 1859, who placed his deed on record but has never paid any taxes thereon from 1860. In 1882 he conveyed the land by quitclaim deed to J. M. Gaylord. In 1886 Green executed a quitclaim deed to Stafford, and in 1887 Gaylord made a like conveyance to Stafford. This action was brought June 21, 1888. At that time the tax deed under which Lauver claims had been recorded almost 19 years. He and those under whom he claimed had been in actual possession of the land about 16 years, and Lauver himself had been in actual possession under his title about 10 years before the bringing of the action.

Under these facts, the only question presented is the validity of the tax deed of 1869. Unless it is void upon its face, Lauver was entitled to recover, and at this late day and under the circumstances which have been mentioned, the tax deed should be liberally construed. (*Sanger v. Rice,* 43 Kas. 580.)

It is contended that the deed is void for the reason that the tax sale was made at a time not authorized by statute, and also that the certificate of sale was assigned to Hindman in 1868, by one having no authority to transfer the same. The deed recites that the sale of the land was made on September 2, 1862, and it is insisted that the statute required the sales to be made on the first Tuesday of May and the next succeeding days. It was provided in the tax law then in force that the tax sale should commence on the first Tuesday in May in each year, and should continue from day to day until it was completed. (Comp. Laws of 1862, ch. 197, §§ 36, 39.) But § 70 of the same act provided that, if the treasurer unavoidably omitted or failed to sell lands or lots at that time, he should advertise and sell them on the first Tuesday of September next ensuing. It appears that the first Tuesday in September, 1862, was the second day of September, and hence there was sufficient authority for the sale that was made. It has been suggested that there is no recital in the tax deed that the treasurer unavoidably omitted or failed to sell in May, but this is not necessary to the validity of the deed. (*Hobson v. Dutton*, 9 Kas. 477.) The statute did not prescribe that the deed should contain such a recital, and the presumption, in the absence of any showing to the contrary, is that the officer performed his duty in this respect. (*Washington v. Hosp*, 43 Kas. 324.)

The point that the assignment was made by the county clerk, when it should have been made by the treasurer, cannot be sustained. It is true that the tax law in force at the time of the sale provided for assignment by the county treasurer. (Comp. Laws of 1862, ch. 197, § 44.) But before the assignment in the present case was made, the law in this respect was changed. In § 148, chapter 107, of the General Statutes of 1868, it was provided "that all certificates of sale of lands heretofore made to the respective counties and in the charge of the county treasurer shall be by said treasurer delivered to the county clerk, who is hereby authorized to transfer or assign the same in the same manner and on the

same conditions as certificates issued under the provisions of this act." This act took effect in March, 1868, and the assignment, as the tax deed shows, was made on the 9th day of September, 1868.

All of the objections urged against the validity of the deed have been examined, and none of them appear to be sufficient to set it aside. It recites that the sale was conducted in substantial conformity with all the requirements of the law, and that, no one having offered to pay the taxes and charges against the same, it was bid off by the county treasurer in the name of the county, agreeably with law, and that afterward, on the 9th day of September, 1868, John Hindman having offered to pay the sum of $8.20, the whole amount of the taxes due on said land for the year 1861, together with the interest, charges and costs thereon, and that Hindman having at the same time paid all the subsequent taxes and charges against the land, amounting to $145.41, the certificate of sale was assigned to him according to law. It further recites, that the necessary time having elapsed without any redemption, and in consideration of a total sum of $153.61, which had been paid by Hindman to the county treasurer, the conveyance was made.

We think the deed was in substantial conformity with the statute then in force, and that the district court ruled correctly in sustaining the same.

The judgment will be affirmed.

All the Justices concurring.