No. 29,042.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Appellant*, v. D. N. WADE and A. A. ARMSTRONG, *Appellees*.

(278 Pac. 1067.)

Opinion filed July 6, 1929.

*William A. Smith,* attorney-general, *Leon W. Lundblade,* assistant attorney-general, and *Hugh MacFarland,* of Topeka, for the appellant.

*Hugh T. Fisher* and *Tinkham Veale,* both of Topeka, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The state prosecutes this action to enjoin the defendants from repairing and reconstructing a building on lots numbered 182, 184, 186 and 188 in Horne's addition and located at numbers 1212, 1214 and 1216 West Eighth avenue in the city of Topeka, across the street north from the governor's mansion. Judgment was rendered in favor of the defendants, and the state appeals. The petition alleged that defendant Wade was the owner of the property; that defendant Armstrong was a contractor engaged in the business of constructing houses and, at the time the petition was filed, was engaged in repairing and reconstructing the building situated on the lots above described; that, on March 14, 1925, the building situated on the lots was damaged and destroyed by fire; that the defendants threaten to build, repair, and reconstruct a two-story building on the above-described lots to be used as a garage and for apartments to be rented to the transient public; that the building, when reconstructed and so used, will constitute a nuisance in the neighborhood and vicinity on account of the use of oils and gases, the noise and odors that will arise therefrom, and the hours at which the business will be operated; that in 1923 the city of Topeka enacted a zoning ordinance by which the property above described was placed in a residence district from which business of the character to which it is intended to devote the building when reconstructed is excluded; that defendant Wade filed a petition with the city commissioners for permission to repair and reconstruct the building, which application was by the city commissioners denied; that the building as it now stands has been repeatedly condemned; that upon his application being denied, the defendant Wade filed an action in the district court asking that the city authorities be enjoined from interfering with him in the repair and reconstruction of the building; that at the time the present action was commenced the action commenced by Wade had not been determined; that on

April 19, 1927, defendant Wade presented a new application for a permit to repair and reconstruct the building, which was denied by the building inspector and fire marshal of the city of Topeka; that on appeal to the city commission permit to so repair and reconstruct the building was granted; that the city commission, in granting such permit, acted in violation of the zoning ordinance of the city of Topeka; and that for that reason the action of the city commission was illegal and void.

The defendant Wade answered, setting up his ownership of the property, and alleged that he had desired to repair and reconstruct the building and that he had been granted a permit so to do. The action was tried by the district court, and extensive findings of fact and conclusions of law were made. The findings of fact consisted of a résumé of the evidence on which the conclusions of law were based.

The fifteenth finding of fact was as follows:

"In March, 1925, and before the defendant's building was destroyed by fire, his property, including the real estate and the [building] situated thereon, was of the fair and reasonable value of $22,000, of which the value of the lots was $5,000 and the value of the building $17,000."

The conclusions of law were as follows:

"I. Neither the denial of the fire marshal and building inspector of defendant's first application for a permit to repair and rebuild his building, nor the action of the city commissioners in refusing defendant's appeal from the order of such fire marshal, had the effect of legally preventing the defendant from again applying for a permit, nor of preventing the board of commissioners from sustaining his second appeal.

"II. The pendency of the action brought by defendant as plaintiff against the fire marshal, city commissioners and city attorney did not affect defendant's legal right to again make application to repair and rebuild his building, nor did it affect the jurisdiction and legal right of the board of commissioners from considering and granting defendant's second appeal.

"III. The fact that defendant's second application and appeal were made more than one year after the damage to his building by fire, did not affect the legal right of defendant to again make application to repair and rebuild his building, nor affect the jurisdiction and legal right of the board of commissioners to consider and grant defendant's second appeal.

"IV. The fact that defendant did not apply for a certificate of occupancy at the time he applied for the second permit did not deprive the city commissioners of jurisdiction to hear and pass upon defendant's second appeal or invalidate the permit of defendant to repair and rebuild his building required by the fire marshal as the result of the granting of defendant's second appeal by the city commissioners.

"V. The city commissioners of Topeka had jurisdiction to consider and act upon defendant's second appeal and grant the same, and to reverse the decision of the fire marshal and building inspector and denying defendant's second application.

"V. Having jurisdiction to consider and determine defendant's second appeal, and the proceedings of the commission in the consideration of such appeal being free from fraud and not arbitrary or capricious, the decision of such board upon such appeal is final and cannot be inquired into in this action.

"VI. The permit granted the defendant by the fire marshal and building inspector of Topeka, as a result of the city commissioners granting defendant's second appeal, is valid under the zoning ordinances of Topeka, and cannot be annulled and set aside in this action.

"VII. The building of defendant, if repaired and rebuilt as contemplated, will not constitute either a public or private nuisance.

"VIII. The use of defendant's building, if repaired and rebuilt as contemplated as a public garage, will not constitute a nuisance *per se*.

"IX. The use of defendant's building, if repaired and rebuilt as contemplated as a public garage, would not constitute a public nuisance.

"X. The use of defendant's building, if repaired and rebuilt as contemplated as a public garage, will not constitute a private nuisance to plaintiff."

Conclusions of law numbered 7, 8, 9 and 10 are findings of the ultimate facts on which the judgment was based.

■ The state argues that the building, after being rebuilt and occupied as intended, would be a nuisance and that the court should have so found. In *Donaldson v. Powell*, 123 Kan. 232, 254 Pac. 1033, this court, in affirming a judgment enjoining the operation of a filling station in the city of Emporia, quoted the conclusion reached by the trial court as follows:

"That the operation and maintenance of said filling station by the defendant at the place in question and in the manner in which it is operated at the place aforesaid constitutes and is a menace, annoyance and disturbance of the peace of the plaintiff and other resident property owners adjacent and in the near vicinity; and is a nuisance." (p. 233.)

The judgment in that case was affirmed because the trial court, from the evidence, found that the establishment of a filling station would be a nuisance.

In *Phillips v. Brick Co.*, 72 Kan. 643, 82 Pac. 787, a judgment enjoining the operation of a brick plant on account of its injury to the neighboring premises was affirmed where the trial court had found that its operation would constitute a nuisance.

In *Courtney v. Smelting Co.*, 104 Kan. 362, 179 Pac. 342, the judgment allowing damages caused by smoke, fumes and gases from the operation of a smelter was affirmed.

In *State, ex rel., v. Stilwell,* 114 Kan. 808, 220 Pac. 1058, a judgment abating a nuisance was affirmed.

In *Remsberg v. Cement Co.,* 73 Kan. 66, 84 Pac. 548, this court said:

"Whether the storing of dynamite, conceded to be a lawful business, is a nuisance *per se* by reason of inappropriate location is, in this case, a question of fact as to whether persons and property in proximity thereto would be exposed to danger that is unavoidable and inherent in the business when properly conducted." (Syl. ¶ 1.)

From these cases, and from other cases of like character in this state, the rule can be deduced that whether or not a certain place constitutes a nuisance is a question of fact to be determined from the evidence. If there is evidence sufficient to support the finding that a nuisance exists, that finding will not be disturbed; if the finding is that the place is not a nuisance, the finding will stand. In the present action, the trial court found that the use of the building as a garage, when repaired and reconstructed, would not constitute a nuisance. That finding was supported by evidence and is conclusive in this court.

■ The state attacks the permit under which the defendants are seeking to reconstruct the building. When the trial court found that the building would not be a nuisance, the nuisance phase of the case disappeared. Nothing is left except the attack by the state on the permit. The state argues that it has the right to prosecute this action to enjoin the defendants from repairing and reconstructing the building, without regard to whether or not the building will be a nuisance after its reconstruction, because the permit was illegally issued and is void.

The defendant Wade owned the property on March 15, 1925, and had owned it for about a year prior thereto. At that time there was located on the property a two-story building which was occupied by a public garage and which was on that day partially destroyed by fire. On September 4, 1925, Wade filed an application with the fire marshal and building inspector of the city of Topeka for a permit to repair and reconstruct the building. That application was denied. Wade appealed to the city commission, which sustained the ruling of the fire marshal. On September 16, 1925, defendant Wade commenced the action in the district court of Shawnee county to have the order of the city commission denying him a permit declared unreasonable. That action was dismissed on January 12, 1929. On June

14, 1927, a permit to remodel the building to be used as a public garage was issued to defendant Wade. The present action was commenced on June 16, 1927, and judgment was rendered on April 13, 1929. The zoning ordinance prohibited the erection of a garage at the place in question, but under certain conditions permitted the repair and continued existence of one that had been in operation as such before the passage of the zoning ordinance. That ordinance provided that if a building used for a prohibited business should be destroyed by fire to an extent of not more than fifty per cent of its assessed valuation, a permit for its reconstruction could be granted if applied for within twelve months after its destruction. From the time defendant Wade filed application for a permit to reconstruct the building until he was finally given a permit, he was continually using every possible effort to obtain such permit. He was not guilty of laches. If the statute of limitations has any parallel, he was not barred, because within the proper time he commenced proceedings to obtain a permit and never ceased until he received it.

The city commission of the city of Topeka had power to change its attitude toward granting to the defendant Wade a permit to reconstruct the building.

In *Salt Co. v. Hutchinson*, 72 Kan. 99, 82 Pac. 721, this court said:

"A petition to the mayor and council of a city of the second class under section 1068 of the General Statutes of 1901 confers upon that tribunal exclusive power to cause such special improvements to be constructed and to determine the kind and quality thereof. In the exercise of that power they may enact, amend or repeal any ordinance relating to the special improvements under consideration, if the vested rights of third persons be not injuriously affected thereby." (Syl. ¶ 1.)

■ Did the action of D. N. Wade against the city asking that the order denying his first application for a permit be declared unreasonable preclude him from thereafter making additional applications for permission to erect the building? The commissioners in passing on the appeal of D. N. Wade did not act in a judicial capacity; they acted in an administrative or legislative capacity. The determination of the commission to deny Wade permission to erect the building did not preclude him from thereafter making other applications for such permission, nor preclude the commission from thereafter granting such permission.

The plaintiff argues that defendant Wade by his action in the district court was barred from thereafter making subsequent ap-

plications, and cites section 13-1106 of the Revised Statutes. That section reads:

"That any ordinance or regulation provided for or authorized by this act shall be reasonable, and any taxpayer or any other person having an interest in property affected, may have the reasonableness of any ordinance or regulation determined by bringing an action, in the district court of the county in which such city is situated, against the governing body of said city."

If judgment had been rendered against Wade in the action commenced by him to have declared unreasonable the order made by the city commissioners, that judgment would have precluded him from thereafter acting on that application; but no judgment was rendered in the action; it was dismissed. Judgment, if it had been rendered, would not have barred Wade from thereafter making new applications to the city commissioners for permission to repair and reconstruct the building that had been destroyed.

The state contends that the fire damaged the building more than fifty per cent of its assessed valuation. The city commission found that the building had been damaged less than fifty per cent of its assessed valuation. That finding must have been based on evidence. For that reason it is conclusive unless it be shown that the finding was fraudulently or corruptly arrived at. On the trial of the present action there was no evidence to show any fraud or corruption on the part of the city commission. There was evidence on the trial which tended to prove that the building had been damaged more than fifty per cent of its assessed valuation, but there was evidence introduced which tended to prove the contrary. It should be noted that neither the city nor any one of its officers is a party to this action.

In *Lownsberry v. Rakestraw*, 14 Kan. 151, it was declared that—

"Where the determination of any question involving discretion is committed to any officer or tribunal within the limits of the jurisdiction conferred, his or their decision is conclusive thereof, and can be attacked collaterally only for fraud." (Syl. ¶ 2.)

In *Stafford v. Lauver*, 49 Kan. 690, 31 Pac. 302, this court said:

"The presumption of law, in the absence of evidence to the contrary, is that public officers perform the duties devolving upon them." (Syl. ¶ 3.)

In *Photo Play Corporation v. Board of Review*, 102 Kan. 356, 169 Pac. 1154, it was declared that—

"Under the act relating to motion-picture films (chapter 308 of the Laws of

1917) the Kansas state board of review is given full power and discretion to determine whether films and reels offered for its examination and decision are moral and proper for exhibition, and its determination is conclusive and not open to review or interference by the courts unless its action is fraudulent, arbitrary, or in excess of its authority." (Syl. ¶ 1.)

"There have been repeated holdings that the decisions of a board or other tribunal upon which the legislature has conferred the exercise of nonjudicial power, if made in good faith, are not open to judicial control or review, and that in such a case a court may go no farther than to prevent the abuse of the power so vested. In respect to the powers conferred on a municipal body it has been said that 'the courts have no supervisory power over the policy of municipal legislation. They can only interfere to curb action which is *ultra vires* because of some constitutional impediment or lack of antecedent legislative authority, or because the action is so arbitrary, capricious, unreasonable, and subversive of private right as to indicate a clear abuse rather than a *bona fide* exercise of power.'" (p. 359.)

In *Razor Co. v. Guymon,* 110 Kan. 745, 205 Pac. 635, this court again declared that rule in the following language:

"In the absence of evidence to the contrary, it will be presumed that the action of the state charter board was regularly and legally taken." (Syl. ¶ 3.)

Many other cases might be cited, but it is unnecessary to do so. The judgment is affirmed.