No. 30,086.

John J. Simmonds, for Himself and All Others similarly situated, *Appellant*, v. Fritz O. Meyn, and Robert C. Rankin, as Mayor of the City of Lawrence, et al., *Appellees.*

(7 P. 2d 506.)

Opinion filed January 30, 1932.

*C. A. Smart,* of Lawrence, for the appellant.

*Walter G. Thiele* and *A. B. Mitchell,* both of Lawrence, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an action to enjoin the construction and operation of a filling station on lot number 166 on Massachusetts street in Lawrence, and to have adjudged void ordinance number 1739 of the city of Lawrence, which amended a prior zoning ordinance of the city. The trial court made findings of fact and rendered judgment for defendant. Plaintiff has appealed. The findings of fact tell the story of the controversy, as follows:

"1. The defendant, Fritz Meyn, is the owner of lot number 166, Massachusetts street, Lawrence, Kan., which is located at the southeast corner of the intersection of Massachusetts and Thirteenth streets in said city, and the plaintiff, Simmonds, owns property directly across the street west of said lot.

"2. By ordinance of the city of Lawrence, number 1637, which is an ordinance defining the uses to which real property in the city of Lawrence may be put, usually characterized as a zoning ordinance, said lot 166 was placed in the U-2 zone or district and its use restricted to residences, apartment houses, hotels and- kindred structures.

"3. In January, 1930, the defendant, Meyn, applied to the commission of the city of Lawrence, in writing, requesting the rezoning of said lot for the uses that it might be put to and asked that it be changed from U-2 district to a U-3 district. This application was referred to the planning commission of the city, which refused to act upon it for the reason that the applicant had not complied with a rule of the planning commission, and it was returned to the city commission without recommendation.

"4. In February, 1930, the city commission by a unanimous vote passed an ordinance, known as ordinance number 1739, which provided, among other things, 'That the following described real property in the said city of Lawrence, to wit: Lot number 166 on Massachusetts street in said city, be placed in U-3 district.' The title to ordinance number 1739 read as follows: 'An ordinance amending section one of ordinance number 1637, being section 19-101 of the revised ordinances of the city of Lawrence, Kan., of 1926, and repealing said original section one of said ordinance number 1637.' Section three provides: 'That this ordinance shall take effect and be in force from and after ten days after its passage and publication according to law.' Said ordinance is in evidence as exhibit ten, and by reference is made a part of these findings.

"5. The city clerk without further direction than that contained in the ordinance caused the said ordinance 1739 to be published in the Lawrence *Daily Journal-World*, the official city paper of said city, and such ordinance was published the number of times required by law, the first publication appearing on March 18, 1930. A day or two after its passage in February an abortive attempt was made to publish it.

"6. After the ordinance was published a gasoline filling station was installed on said lot 166, which was permissible in a U-3 district.

"7. At the time that the ordinance was published there appeared in connection with it in the same publication, and as a part of the ordinance, a map or plat of the city which by different methods of identification indicated the zone in which the several lots in the city of Lawrence might lie. Exhibit ten is the proof of publication made by the printer of ordinance number 1739. The ordinance was first published on March 18, 1930. The printing on the map or plat of the city above referred to was imperfect with reference to some of the lots, and the impression of lot 166, Massachusetts street, thereon was somewhat indistinct; however, the district in which said lot was placed was ascertainable from the said publication as a whole.

"9. Lot 166, Massachusetts street, for the last sixty years or more has been

used in connection with business enterprises, and since sometime between 1880 and 1890 there has been a grocery store on said lot to which was connected a small residence.

"9½. Massachusetts street extends from the south end of the Kaw river bridge or Sixth street south to Twenty-third street. From Sixth street to South Park it is zoned for business on both sides of the street. South Park begins about three hundred feet south of Eleventh street and continues to about three hundred feet north of Thirteenth street, the open space of the park being on both sides of Massachusetts street, at which point both sides of the street are zoned in the U-2 district. From Thirteenth street south on the west side thereof it is zoned in the U-2 district about two-thirds of the way to Fourteenth street, and for business or U-3 district from thence on south to Fourteenth. The east side of lot 166, which is a corner lot, is in the U-3 district and from there on south to Fourteenth it is zoned in the U-2 district. Lawrence Memorial high school is immediately south of Fourteenth street and the building and yard occupies all of the land up to Fifteenth street. Many of the pupils naturally pass by said lot 166 going to and coming from school. On the west side south of Fourteenth the first few lots are zoned in the U-3 district, and from thence south to Fifteenth it is in the U-2 district. Nearly every fifty-foot lot has a house on it and practically all of the residences in the U-2 district are of a permanent character, as are those on Thirteenth street in the immediate vicinity. The residence owned by the plaintiff, Simmonds, is directly across the street west of said lot 166 and is a particularly substantial and commodious stone residence. The Christian Science church is north of Thirteenth street and probably a hundred feet or more from the corner. The Trinity Lutheran church is about four hundred feet north and east of said lot 166. It is a new building in which there are conducted the usual and ordinary church services.

"10. Most of the property in the immediate neighborhood has been improved with the knowledge of the conditions existing on lot 166.

"11. Installation of a gasoline filling station with its attendant uses, together with the noise incident thereto and the artificial lights used, is distasteful to the plaintiff and to some of the other owners of real estate in the immediate vicinity and may cause some damage from a monetary standpoint to their property for residence purposes. However, from all of the testimony, I am unable to determine satisfactorily the approximate depreciation, if any, which the installation of the station will occasion to the adjacent property with any degree of certainty. The enjoyment by some of the present owners of the residence property near by appears in some instances to be impaired and in other instances it does not appear to be impaired.

"12. Up to the present time the filling station has been conducted in an orderly manner and does not appear to be obnoxious to the parties from any other standpoint than that it is a filling station, except as suggested in the foregoing conclusion.

"13. At the time the city commission had under consideration ordinance number 1739 it had before it practically the same evidence which is before the court in this suit.

"14. The passage of ordinance number 1739 placing lot 166, Massachusetts street, in the U-3 district was a reasonable exercise of the city commission's authority. Ordinance number 1739 is a reasonable one within the meaning of section 13-1106, R. S. 1923.

"Conclusions of Law.

"1. I conclude as a matter of law that ordinance number 1637 was regularly passed and published according to law; that ordinance number 1739 amended in a lawful manner ordinance number 1637 and was regularly passed and published according to law; that thereby lot 166, Massachusetts street, was placed in U-3 district under the zoning ordinance of the city of Lawrence, Kan.

"2. I conclude as a matter of law that in determining the reasonableness of an ordinance as provided for by section 13-1106, R. S. 1923, the test to be applied by the court is whether or not the city commission exercised its legislative function in a reasonable and proper manner, free from capriciousness, fraud or venality. (113 Kan. 154, 118 Kan. 265, 123 Kan. 232, 128 Kan. 646.)"

Appellant first argues that the governing body of the city had no jurisdiction or authority to enact ordinance No. 1739, for the reason that the city planning commission did not act upon the application to reclassify the lot, citing and relying on *Armourdale State Bank v. Kansas City,* 131 Kan. 419, 292 Pac. 745. The case is not in point. In that case there was no planning commission, or committee, or special commission, to which application was made to reclassify property previously zoned and which reported thereon. Here there was a planning commission to which was referred the application to reclassify the lot in question and which made a report on the application to the governing body of the city. In fact, the matter was referred to the planning commission on two occasions. In May, 1929, Mrs. Thurber, who then owned the lot, made a contract to sell it to Fritz Meyn for a stated sum, conditioned on its being rezoned for business purposes. Soon thereafter she filed an application to have the lot reclassified. This application was referred to the planning commission, which, after a hearing, returned the same to the city commission with the recommendation that it be denied. Soon thereafter an ordinance was passed reclassifying the lot, and the sale to Meyn was completed. A question was raised about the validity of that ordinance, and it was held void for the sole reason that the statutory time for a hearing had not been given before its passage. Thereafter Meyn presented an application to have the lot reclassified. That was referred to the planning commission, which in the meantime had adopted a rule

that it would consider no application for a reclassification of property unless it was accompanied by the recommendation of fifty per cent of the property owners within 350 feet. Perhaps this rule was adopted with this particular case in mind. Meyn's application was not accompanied with such recommendations; in fact, they could not be obtained for the reason that more than fifty per cent of such property owners had protested the reclassification. We pass the question whether the planning commission had authority to adopt such a rule. The statute does not specifically give it such authority. Its function appears to be to give fair consideration to the application and make its report. It is not required to make a favorable report. It did return the application to the city commission without recommendation, which, under the circumstances, was tantamount to a recommendation that it be denied. The pertinent portion of the statute (R. S. 13-1102) reads:

"Such proposed change shall first be submitted to the city planning commission or special committee or commission, for recommendation and report."

That statute was complied with in this case. It was not complied with in the case of *Armourdale State Bank v. Kansas City,* supra. The ordinance was passed by the unanimous vote of the city commission, as required by statute (R. S. 13-1102) where there are protests.

Appellant next argues that if the ordinance was legally enacted it gave defendant no right to maintain a gasoline filling station. The ordinance used the term "oil filling station." Appellant points out the difference between "oil" and "gasoline," and argues they are not synonymous. Obviously this is an afterthought. The question was not presented in the court below, and for that reason alone is unavailable to appellant here. Aside from that the contention is highly technical and has no substantial merit. It is true the ordinance in question, as well as the original zoning ordinance, used the term "oil filling station." We are advised in the briefs that under the provisions of the ordinance a score or more of such stations have been constructed and are maintained in the city of Lawrence. It can hardly be said to be a misnomer to call a specially constructed building, with its characteristic grounds and equipment for the sale of oils, greases and gasoline for motor cars, an "oil filling station," or simply an "oil station."

It is next argued by appellant that ordinance No. 1739 is invalid

because it did not by its terms indicate the particular mode of its publication, and because of errors in the publication. The ordinance provided that it should take effect and be in force from and after ten days "after its passage and publication according to law." It was voted upon and passed February 24, 1930. The city clerk caused it to be published in the official city paper the next day. There were errors in this publication. These were brought to the attention of the city clerk, who, on March 18, 1930, had it republished in the official city paper. It is not seriously contended that the ordinance as last published differed materially in any respect from the ordinance voted upon and passed by the city commission. It was published the second time for the purpose of having it correctly published. While the ordinance might have provided the mode of its publication, there is nothing in the statute which requires the city to direct the mode of publication in the ordinance itself. In 43 C. J. 543, the general rule is thus stated: ". . . and if the statute authorizes publication in either of two ways, publication by either will, of course, be sufficient." The text of 19 R. C. L. 901, and our own decisions (*City of Wichita v. Wichita Gas Co.*, 126 Kan. 764, 271 Pac. 270; *Electric Co. v. City of Larned*, 96 Kan. 33, 149 Pac. 704; *Topeka v. Crawford*, 78 Kan. 583, 96 Pac. 862) accord with this view. We note that the original zoning ordinance did not specify the manner of its publication, hence if this point were well taken there would be no valid zoning ordinance, and defendant might use his property for such business as he saw fit.

It is next argued on behalf of appellant that ordinance No. 1739 is invalid for the reason it purports to amend section 1 of the original zoning ordinance of the city, which ordinance, it is argued, was void for the reason that the ordinance was passed by the city commission on the 8th of August, 1927, and that the maps forming a part of that ordinance bear the date of December 15, 1927. It is argued that the maps, with the information thereon, were essential parts of the ordinance, and not having been completed until several months after the ordinance was enacted could not have been considered by the commission when the ordinance was passed. There is evidence tending to show that while the maps bore the date of December 15 they were in fact drawn and completed long before that and were in existence at the time of the passage of the ordinance on the 8th of August. The trial court's finding is in accordance with this evi-

dence and is binding on this court notwithstanding the date that appears on the map, which, from the evidence, perhaps was placed there because at that time plates were being made for its reproduction.

It is next argued that the court excluded material competent testimony. This excluded evidence was not produced in the form of affidavits, depositions, or the testimony of witnesses on the hearing of the motion for a new trial, and under our statute (R. S. 60-3004) error cannot be predicated on its exclusion.

It is next argued there was an abundance of evidence to show definite monetary damage. We have examined the abstracts and briefs on this point and find no reason to disturb the finding of the trial court with respect thereto.

Appellant next argues that the court was not warranted in finding ordinance No. 1739 reasonable. The determination of this question required the consideration of the use to which the lot had been previously put, the use of other near-by property, the growth and development of the uses of various properties in that portion of the city, traffic on the adjoining streets, and perhaps other elements, many of which are enumerated in the findings of the court. In *State, ex rel., v. Wade,* 128 Kan. 646, 278 Pac. 1067, it was said:

"Whether or not the operation of a public garage in a residence district of a city constitutes a nuisance, either public or private, is a question of fact to be found from the evidence; and the determination of the triers of fact on evidence which supports it is conclusive on appeal." (Syl. ¶ 1.)

We have carefully examined all of the evidence pertaining to this question and find no reason to disturb the trial court's finding.

It is argued that the last conclusion of law made by the trial court is erroneous. Perhaps it would not greatly affect this case if it were, for the court having found the facts and the reasonableness of the ordinance, as it did, the result would have been the same had the court not made the second conclusion of law. The proposition announced, however, appears to be a correct interpretation of the former opinions of this court. (*Ware v. City of Wichita,* 113 Kan. 153, 214 Pac. 99; *West v. City of Wichita,* 118 Kan. 265, 234 Pac. 978; *Donaldson v. Powell,* 123 Kan. 232, 254 Pac. 1033; *State, ex rel., v. Wade,* 128 Kan. 646, 278 Pac. 1067.)

We find no error in the record, and the judgment of the court below is affirmed.