313 So.2d 126 (1975)
CITY OF MIAMI BEACH, Appellant,
v.
CITY OF NORTH BAY VILLAGE et al., Appellees.
CITY OF MIAMI BEACH, Appellant,
v.
BAL HARBOUR VILLAGE and Bay Harbor Island, Appellees.
Nos. 74-1264, 74-1265.
District Court of Appeal of Florida, Third District.
May 20, 1975.
Rehearing Denied June 18, 1975.
*127 Joseph A. Wanick, City Atty., and Lee H. Schillinger, Asst. City Atty., for appellant.
Joseph H. Weil, Shutts & Bowen and Thomas H. Anderson and Phillip G. Newcomm, Miami, Lewis I. Horwitz and Richard D. Rosen, Miami Beach, for appellees.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
PER CURIAM.
The City of Miami Beach has a contract with the Miami-Dade Water and Sewer Authority for the furnishing of water to that City. The contract further provides that the Authority shall furnish water to the City of Miami Beach so that Miami Beach can in turn supply water to Bal Harbour Village and North Bay Village. Bal Harbour Village in turn supplies water to the municipality of Bay Harbor Islands. The City of Miami Beach increased the price of water supplied to the other municipalities to a price bearing no apparent relationship to its own water costs. A suit challenging Miami Beach's right to the increased rate was filed by Bal Harbour Village and Bay Harbor Islands. A second suit was filed by the City of North Bay Village. After a joint trial, separate judgments were entered. The City of Miami *128 Beach has appealed each of the judgments. Cross-assignments have been filed. The appeals have been consolidated.
The facts have been set out in the final judgment, and there is no challenge of these findings.
"1. On June 24, 1957, the CITY OF MIAMI ("MIAMI") entered into a written contract with the CITY OF MIAMI BEACH ("MIAMI BEACH") for the supply of water by MIAMI TO MIAMI BEACH. A formula was incorporated into the contract to determine the cost of that water to be paid by MIAMI BEACH to MIAMI. The contract specified that MIAMI BEACH was to supply the water to plaintiff municipalities at a cost which would enable payment of the amount that MIAMI BEACH was to pay MIAMI under the contract. The contract was made for the benefit of plaintiffs as real parties in interest.
"2. The contract was observed by all the parties since its inception. MIAMI BEACH bought the water from MIAMI, used a portion of it, and transmitted it to plaintiff municipalities, receiving from the latter a price which was not objected to by the plaintiffs until the matter arose which gave rise to this suit. This rate was fixed by Section 45.4 of the Code of the CITY OF MIAMI BEACH.
"3. The matter which gave rise to this suit was the passage by MIAMI BEACH of Ordinance 1936 which raised the price of water to plaintiffs from 25 cents per 1,000 gallons to 33 cents per 1,000 gallons. Immediate protest was made by the plaintiffs and this suit was instituted to annul the Council's action. Under order of this Court, plaintiffs paid to defendant 25 cents per 1,000 gallons and deposited the controverted additional 8 cents per 1,000 gallons in an escrow account.
"4. The actual delivery of the water by MIAMI BEACH to plaintiffs and billing was accomplished in the following manner by unwritten agreement of the parties: All of the water for plaintiffs was delivered by MIAMI BEACH to plaintiff BAL HARBOUR VILLAGE and billed to BAL HARBOR VILLAGE. Plaintiff BAL HARBOUR VILLAGE, in turn, delivered a portion of the water to BAY HARBOR ISLANDS and billed BAY HARBOR ISLANDS for the water delivered to it at exactly the same rate as the water was billed by MIAMI BEACH to BAL HARBOUR VILLAGE. Both plaintiffs, BAL HARBOUR VILLAGE and BAY HARBOR ISLANDS, were specifically designated in the contract between MIAMI BEACH and MIAMI as recipients of the water, and I find that the mechanical device mentioned in this paragraph is the same as if MIAMI BEACH had supplied the water directly to BAY HARBOR ISLANDS and billed BAY HARBOR ISLANDS directly.
"5. MIAMI BEACH's Ordinance 1936 providing for an increase in the costs of water to plaintiffs from 25 cents to 33 cents per 1,000 gallons was a general revenue measure of MIAMI BEACH which bore no relationship to the cost of water or its distribution to plaintiffs. The Ordinance was passed as a tax measure in order to balance MIAMI BEACH's general budget. The MIAMI BEACH Council tried to balance its budget by raising its utilities' tax and by other revenue-producing measures, but the raise in the utilities' tax and the other revenue-producing measures were insufficient, and, to make the budget balance, the MIAMI BEACH Council decided to raise the water rates, including the rates to plaintiffs."
The trial judge found: (1) that the increase in the rate was arbitrary, (2) that to the extent that the rate exceeds costs, reserves and other related items, Miami Beach was acting without due process, (3) that each of the plaintiff municipalities is a third party beneficiary of Miami *129 Beach's contract with the water authority. Thereupon, the judge held that the increase was void. He further held that the City of Miami Beach could, within sixty days of the judgment, hold a public hearing and set a rate based upon costs, reserves and other related items.
The City of Miami Beach urges that its contract with the water authority is a private one entered into by the City in its proprietary capacity and that, therefore, the courts have no basis for interference with such contract. In addition, the City points out that it has no obligation to furnish water to any entity except within its corporate boundaries and that this being the case, the courts have no basis for a holding that the City of Miami Beach must furnish water to other municipalities at a "reasonable rate." The trial court, on the other hand, found that the plaintiff municipalities were "third party beneficiaries" of Miami Beach's contract with the water authority and, therefore, that they might have resort to the courts to secure their rights under the contract.
It is precisely because the City of Miami Beach is acting beyond its governmental duty to provide water to its own residents that it is now subject to duties beyond that of other municipalities. Insofar as the City of Miami Beach has become a purveyor of water to other municipalities, it is acting as a public utility. In this connection, it is important that a city-owned and operated water plant is exempt from regulation. See Fla. Stat. § 180.13. But this exemption does not forbid the courts from the normal supervision of contracts in which the public have a vital interest. See City of Leesburg v. Ware, 113 Fla. 760, 153 So. 87.
Miami Beach urges that the court should have dismissed all of the municipalities which do not have direct privity of contract with Miami Beach. The municipalities named in the City of Miami Beach's contract with the water authority[1] have an interest in that contract because their existence depends upon the arrangement to provide water to these municipalities. The provision that the water authority has made for them to have water is incorporated in the City of Miami Beach's contract. Therefore, the named municipalities are, in fact, third party beneficiaries of Miami Beach's contract with the water authority. See Woodbury v. Tampa Waterworks Co., 57 Fla. 243, 249, 49 So. 556 (1909); American Surety Co. of New York v. Smith, 100 Fla. 1012, 130 So. 440 (1930).
The trial judge properly refused to dismiss the affected municipalities from a suit seeking to prevent an alleged unlawful tax upon the water supplied to them.
Next, Miami Beach urges that because the development and construction of the City of Miami Beach water system was financed by the City solely through the sale of general obligation bonds, the courts may not make other municipalities the beneficiaries of that water system. This argument is based upon the fact that water received by Miami Beach from the water authority that is later delivered to the other municipalities must be stored, pumped and transmitted through a portion of the Miami Beach Water System. We think that the trial judge has recognized that the City of Miami Beach may not be required to subsidize other municipalities. To that end, the judgment appealed provided:
* * * * * *

*130 "2. MIAMI BEACH may consider a change of water rates as fixed by Section 45.4 of the Code of the CITY OF MIAMI BEACH prior to Ordinance 1936, and if it so considers, it may, within 60 days of the date of this judgment, hold a public hearing to determine reasonable water rates to plaintiffs depending upon considerations such as costs, reserves, and other related items incurred in the operation of the water system."
* * * * * *
After all, if all municipalities must, like so many tubs, "sit on their own bottoms," then the City of Miami Beach will be hard put to find all of its needs satisfied upon its own island.
Miami Beach's final point is directed to the trial court's refusal to require North Bay Village to pay a 5% penalty because of late payments to the City of Miami Beach during the progress of the litigation in the trial court. We consider the imposition of such a penalty upon parties for failures occurring during the progress of the cause to be a matter of judicial discretion. There has been no showing of an abuse of that discretion here. Cf. Dade County v. City of North Miami Beach, Fla. 1953, 69 So.2d 780.
The appellees have filed cross-assignments which are argued under two points. The first urges that the court erred in allowing the City of Miami Beach to hold hearings to determine a rate for the water delivered. The burden of this argument is that the rate so determined will be fixed unilaterally and without court supervision. We do not construe the final judgment to be so holding. When municipalities cannot agree, they must resort to the courts as other corporations must. The judgment appealed simply recognized that Miami Beach may be entitled to a rate that will compensate it for services rendered. When municipalities do have resort to the courts, they must be governed by the same principles of equity and justice as other litigants. Since no state or federal statute forbids the procedure suggested in the judgment and it seems capable of achieving a just result, we find no basis for interference with the judgment in that particular.
The second point raised on cross-assignment is whether the anticipated rate can legally be made retroactive to the date that Miami Beach tried to raise the rate as a revenue measure. We find nothing to indicate that such a provision is illegal or improper.
Affirmed.
NOTES
[1] Section I. of the contract provides as follows:

"General Purpose. Insofar as it may be lawful to do so, the Department shall sell and deliver to Miami Beach, and Miami Beach shall purchase and receive from the Department hereunder, all water necessary to fulfill the water requirements of Miami Beach throughout the entire territory served by it at all times during the effective period of this contract, such territory including The City of Miami Beach, the Town of Surfside, Bal Harbour Village, the Town of Bay Harbor Islands, Indian Creek Village, and North Bay Village, and such other areas of Dade County as the Department and Miami Beach have heretofore agreed upon or shall agree upon hereafter in writing ..."