347 So.2d 699 (1977)
STATE of Florida ex rel. CITY OF MIAMI BEACH, etc., Appellant,
v.
METROPOLITAN DADE COUNTY WATER AND SEWER BOARD, etc., et al., Appellees.
CITY OF MIAMI BEACH, etc., Appellant,
v.
DADE COUNTY, Florida, etc., Appellee.
DADE COUNTY, Florida, a Political Subdivision of the State of Florida, Appellant,
v.
CITY OF MIAMI BEACH, a Florida Municipal Corporation, Appellee.
Nos. 76-269, 76-1370 and 76-1276.
District Court of Appeal of Florida, Third District.
June 14, 1977.
Rehearing Denied July 27, 1977.
*700 Joseph A. Wanick, City Atty. and Lee H. Schillinger, Asst. City Atty., for City of Miami Beach.
Stuart L. Simon, County Atty., Richard M. Dunn and Stanley B. Price, Asst. County Attys., for Dade County.
Before PEARSON, BARKDULL and HAVERFIELD, JJ.
BARKDULL, Judge.
Following this court's opinion reported as City of Miami Beach v. City of North Bay Village, 313 So.2d 126 (Fla. 3rd D.C.A. 1975); opinion rendered May 20, 1975, with rehearing denied June 18, 1975, Metropolitan Dade County, through its Board of County Commissioners, caused to be adopted in July of 1975 an ordinance authorizing the Metropolitan Dade County Water and Sewer Board to assume jurisdiction and authority over water rates charged by municipalities to customers outside of its territorial jurisdiction. The ordinance was scheduled for second reading on September 3, 1975 at 9:00 A.M. and a public hearing thereof was duly noticed on August 27, 1975. At the public hearing on September 3, 1975, the proposed ordinance was read a second time by title, pursuant to the provisions of the Metropolitan Charter.[1] During the course of discussion and debate on the ordinance, the County Commissioners became aware that the City of Miami Beach had scheduled a hearing for 2:30 P.M. that afternoon to fix reasonable rates, pursuant to the mandate of this court in City of Miami Beach v. City of North Bay Village, supra, and upon motion duly made the Metropolitan Dade County Commission proposed to adopt an emergency ordinance extending the jurisdiction of the Metropolitan Dade County Water and Sewer Board to supervise rates charged by municipalities in the sale of water outside their geographical city limits.
Pursuant to the provisions of the County Charter, the Board of County Commissioners has the power to enact emergency ordinances provided that, after the adoption of same, the ordinance[2] is advertised within ten (10) days thereof.
The initial ordinance was amended to add the word "emergency" alongside the title and to make the ordinance effective immediately [this ordinance was published as ordinance # 75-68 and will be referred to herein as such], whereas the proposed ordinance would have been effective ten (10) days after passage.[3]
The City of Miami Beach proceeded with its hearing scheduled for that afternoon, and fixed a water rate to be charged for customers outside the City. Shortly thereafter a clerk of the County Commission *701 altered the ordinance as adopted, by inserting a paragraph finding that an emergency existed and paragraphs relating to the publication of the ordinance as an emergency [this will be referred to herein as ordinance # 75-68X]. Thereafter, the Metropolitan Dade County Water and Sewer Board issued a rule to show cause directed to the City of Miami Beach, preparatory to having a hearing to determine whether the water rate charged to customers outside the City limits was reasonable, pursuant to the alleged authority granted to the Board by Ordinance # 75-68. The City then instituted what it styled a "Petition for Writ of Certiorari to the Metropolitan Dade County Water and Sewer Board and Petition for Rule Nisi and for Writ of Prohibition to the Metropolitan Dade County Water and Sewer Board and for Injunctive Relief" and, on January 15, 1976, secured the issuance of a rule nisi in prohibition directed to the Metropolitan Dade County Water and Sewer Board. Upon the return day provided in the rule nisi, the trial judge conducted a hearing in which, among other things, he vacated the rule nisi and proceeded to entertain the matter as a petition for certiorari to review the authority of the Board to issue the rule to show cause. This order was entered on January 30, 1976.
Thereafter, the City of Miami Beach filed an independent law suit, contesting the power of the County Commissioners to enact Ordinance # 75-68 and, further, that if the County had the power they invalidly enacted the ordinance as an emergency ordinance and there was, in fact, no emergency. The trial court proceeded to a final determination and found the following as to the authority of the County to enact the ordinance:
* * * * * *
"2. The plaintiff has also raised the issue of whether Dade County is empowered and authorized by the Metropolitan Dade County Charter to regulate rates charged by municipally owned utilities to other municipalities. The Court finds that the County has the power and authority under the Charter to enact such an ordinance."
* * * * * *
But, the court found that the ordinance or ordinances adopted as # 75-68 and # 75-68X were invalidly adopted as emergency ordinances. The City appealed from the order vacating the rule nisi in prohibition [this is Case no 76-269 in this court]. The City also appealed from that portion of the final judgment, in its independent action, that found that Metropolitan Dade County had the power and authority, under its Charter, to enact an ordinance regulating water rates charged by the municipality outside of its territorial limits [this appeal is filed in this court under Clerk's file No. 76-1370]. Dade County also appealed from the final judgment in this independent action, contending the trial judge was in error when he struck down ordinance # 75-68. These matters were consolidated for purposes of oral argument.
The first question to be determined is whether or not Metropolitan Dade County has the power to regulate the rate charged by municipalities for water to their customers outside of their geographical area. The County contends they have this power pursuant to the constitutional provision authorizing the establishment of Metropolitan Dade County, to wit: Article VIII, Section 11(1)(b), Constitution of the State of Florida (1885); and that the Metropolitan Charter itself contains the following provisions relative to the regulation of water rates:
* * * * * *
"Charter of Metropolitan Dade County, Section 1.01.a:
* * * * * *
"9. Provide and regulate or permit municipalities to provide and regulate waste and sewage collection and disposal and water supply and conservation programs.
* * * * * *
"14. Regulate, control, take over, and grant franchises to, or itself operate gas, light, power, telephone and other utilities, sanitary and sewage collection and disposal systems, water supply, treatment, and service systems * * *.
* * * * * *
"18. Set reasonable minimum standards for all governmental units in the county for the performance of any service or function. The standards shall not be discriminatory as between similar areas. If *702 a governmental unit fails to comply with such standards, and does not correct such failure after reasonable notice by the Board, then the Board may take over and perform, regulate, or grant franchises to operate any such service. The Board may also take over and operate, or grant franchises to operate any municipal service if:
* * * * * *
The City responds that the power to regulate does not carry with it the power to fix the rate charged for water, citing the following authorities: State v. Burr, 79 Fla. 290, 84 So. 61 (1920); City of Winchester v. Winchester Water Works Co., 251 U.S. 192, 40 S.Ct. 123, 64 L.Ed. 221 (1920); State ex rel. Garner v. Missouri & Kansas Telephone Co., 189 Mo. 83, 88 S.W. 41.
This court has previously held, in City of Miami Beach v. City of North Bay Village, supra, that a municipality has the power to put a surcharge on water rates. Compare: Mohme v. City of Cocoa, 328 So.2d 422 (Fla. 1976). This court has also previously held that Dade County had the power to enforce a water moratorium directed to municipalities. See: City of North Miami Beach v. Metropolitan Dade County, 317 So.2d 110 (Fla. 1975). Considering the aims of metropolitan government, we hold that the power to regulate (as set forth in the Charter) does carry with it the power to regulate the water charges charged by a municipality to customers outside of its territorial jurisdiction and, therefore, we affirm the trial judge on this holding. See: State v. Guertin, 89 N.H. 126, 193 A. 237 (1937), wherein the following is found:
* * * * * *
"* * * the question remains as to whether or not the powers granted include the power to regulate rates. We believe that such power is included within the meaning of the words used.
"The word `regulate' is a broad one. It means `Adjust or control by rule, method or established mode; to direct by rule, or restriction; to subject to governing principles or laws.' Webster, New International Dictionary. The word itself contains no suggestion of any limitation as to the features which may be regulated, and no inference of any such limitation can be drawn from the context in which it is used in the statute."
* * * * * *
Turning next to the question of the validity of Ordinances # 75-68 and # 75-68X, which were found to be invalid by the trial judge, we first affirm the trial judge in holding that the ordinance [# 76-68X], that was altered subsequent to the public hearing by a clerk of the County Commission, is an invalid ordinance [this point was conceded by the County in argument]. Turning to the other Ordinance # 75-68, which was altered at the time of its adoption to show in its title that it was an emergency and that it was to become effective immediately, we must address ourselves, first, to the question of whether or not (if an emergency existed) it must be recited in the ordinance itself and not merely stated in the minutes of the Commission meeting. Secondly, whether the provision relative to advertisement, pursuant to the provisions of the Charter, must be included in the ordinance.
In reviewing the authorities on whether or not an emergency ordinance must include therein a statement or section declaring the emergency setting forth facts supporting the declaration, 56 Am.Jur.2d, § 353 states: "* * * Generally, the reason for enacting the ordinance must be set out therein. * * *" However, further research indicates that a more proper statement would be that the reasons for enacting an emergency ordinance must be stated therein when the statute or charter, granting unto the governing body the power to enact emergency ordinance, requires such a statement. See: Graham v. Dye, 308 Ill. 283, 139 N.E. 390; People v. Schraeberg, 340 Ill. 620, 173 N.E. 148; McIntyre v. Commonwealth, 221 Ky. 16, 297 S.W. 931; State v. Regan, 317 Mo. 1216, 298 S.W. 747 (1927); State v. Pulliam, 37 P.2d 417 (1934); 35 A.L.R.2d 586, pp. 595, 599, §§ 4, 5. *703 There are several Florida cases dealing with emergency ordinance, and it appears that in all but two the emergency was stated in the ordinance. State v. Dillon, 75 Fla. 785, 79 So. 29 (1918); Metropolis Publishing Company v. City of Miami, 100 Fla. 784, 129 So. 913 (1930); State v. City of Miami, 101 Fla. 585, 134 So. 541 (1931); Glackman v. City of Miami Beach, 51 So.2d 294 (Fla. 1951). In those cases, the court did not expound on the issue of requiring that the statement of emergency be included in the ordinance. See: Anno. 35 A.L.R.2d 595. In one of the cited cases there was no indication as to whether or not a statement of emergency was included in the ordinance. See: State v. Keller, 129 Fla. 276, 176 So. 176 (1937). In another, while the court stated the ordinance failed to set forth the nature of the emergency therein, the court merely held it was competent under that situation to raise the question of whether or not an emergency did, in fact, exist. See: Fuller v. Gardner, 138 Fla. 837, 190 So. 442 (1939). Further research reveals two cases where enabling legislation required a statement of emergency be contained in the ordinance and, upon review, the courts held that the simple statement that an "emergency existed" constituted compliance with the enabling legislation. See: City of Roanoke v. Elliott, 123 Va. 393, 96 S.E. 819 (1918); Read v. City of Scottsbluff, 179 Neb. 410, 138 N.W.2d 471.
The Charter of Metropolitan Dade County, as it pertains to enactment of an emergency ordinance, states in Section 1.02f:
"To meet a public emergency affecting life, health, property, or public safety, the Board by two-thirds vote of the members of the Board may adopt an emergency ordinance at the meeting at which it is introduced, and may make it effective immediately, except that no such ordinance may be used to levy taxes, grant or extend a franchise, or authorize the borrowing of money. After adoption of an emergency ordinance, the Board shall have it published in full within ten days in a daily newspaper of general circulation."
There is no requirement that the County include a statement in an emergency ordinance of what constituted the emergency and thus, under the foregoing, it would appear that it is not essential to do so. Even if such a requirement were deemed necessary, it would appear that the County, by including the word "emergency" in the title of the ordinance, would have made a sufficient declaration of emergency under the holdings in City of Roanoke v. Elliott, supra; Reade v. City of Scottsbluff, supra.
In the instant case, where all procedures to validly enact a regular ordinance had been complied with and the only effect of the emergency declaration would be to permit the ordinance to become effective immediately rather than waiting ten days, even if the emergency procedure was in error the ordinance would not be invalid but the effective date would only be postponed until the time a regular ordinance would become operative. See: Lifschitz v. City of Miami Beach, 339 So.2d 232 (Fla. 3rd D.C.A. 1976); McCall v. State ex rel. Daniels, 156 Fla. 437, 23 So.2d 492 (1945). In Lifschitz v. City of Miami Beach, supra, the following is found:
* * * * * *
"Assuming arguendo that the use of the emergency procedure was error, the trial court will not be reversed because, as stated in McCall v. State ex rel. Daniels, * * * 493-94 * * *,
`* * * even if the declaration of an emergency were found defective the ordinance would not, for that reason, be void, but the effective date would only be postponed until the time an ordinary ordinance would become operative.'"
* * * * * *
Turning to the necessity to include provisions in an emergency ordinance relative to advertisement thereof, we once again find the requirement is only necessary where a statute or the charter requires such. See: Simmonds v. Meyn, 134 Kan. 419, 7 P.2d 506 (1932). Therefore, where in this case there is no statutory or charter requirement to include matters of publication *704 in the emergency ordinance, it would appear that failure to do so would not render the ordinance invalid; and Ordinance # 75-68 is valid as an emergency ordinance.
Therefore, the actions of the trial judge, review of which is sought by the City of Miami Beach, are affirmed; the action of the trial judge, review of which is sought by the County, is reversed as to Ordinance # 75-68 and affirmed as to Ordinance # 75-68X.
Affirmed in part; reversed in part.
NOTES
[1] "Sec. 1.02. Resolutions and ordinances.

* * * * * *
"(C) At the time and place so advertised, or at any time and place to which such public hearing may from time to time be adjourned, the ordinance shall be read by title and a public hearing shall be held. After the hearing, the Board may pass the ordinance with or without amendment."
* * * * * *
[2] "Sec. 1.02. Resolutions and ordinances.

* * * * * *
"(F) To meet a public emergency affecting life, health, property, or public safety the Board by two-thirds vote of the members of the Board may adopt an emergency ordinance at the meeting at which it is introduced, and may make it effective immediately, except that no such ordinance may be used to levy taxes, grant or extend a franchise, or authorize the borrowing of money. After the adoption of an emergency ordinance, the Board shall have it published in full within ten days in a daily newspaper of general circulation."
* * * * * *
[3] "Sec. 1.02. Resolutions and ordinances.

* * * * * *
"(E) The effective date of any ordinance shall be prescribed therein, but the effective date shall not be earlier than ten days after its enactment."
* * * * * *