No. 28,763.

W. V. Heckman, *Appellee,* v. The City of Independence and Glen H. Hackmaster, *Appellants.*

(274 Pac. 732.)

Opinion filed February 9, 1929.

*Charles D. Shukers,* city attorney, *T. S. Salathiel* and *Thurman Hill,* both of Independence, for the appellants.

*Thomas E. Wagstaff* and *Jay W. Scovel,* both of Independence, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one to compel the city to issue a building permit contrary to provisions of a zoning ordinance. The district court held the ordinance to be unreasonable and arbitrary. The city appeals.

The ordinance divided the city into three zones, a business zone, a residence zone, and an unclassified zone. The relation of the business zone to the residence zone at the place in controversy is disclosed by the accompanying map.

Plaintiff owns the three 25-foot lots fronting on Main street at the northeast corner of block 57. He has occupied the lots as a residence since 1881. The zoning ordinance was passed in March, 1928. In October, 1928, plaintiff applied for a building permit for a structure to be used by himself or his "assigns," the lots being worth, for "business purposes," $13,250. The structure was called a "master service station," to be used—

"For full service to automobiles and other auto vehicles; this service to in. clude gas, oil, ignition, tires, auto wash, grease, battery service, and brake testing.

"This plant or station will be heated by natural gas.

"The specifications of the erection of this plant call for white stone facing. and the proposed cost of the plant according to specifications is $33,000."

· MYRTLE · STREET ·

· UNSHADED PORTION : RESIDENCE PROPERTY
· SHADED PORTION : BUSINESS PROPERTY
· HEAVY LINE DIVIDES RESIDENCE ZONE FROM BUSINESS ZONE.

The application also covered construction of approaches to the service station from Main and Ninth streets.

The court made findings of fact. Finding No. 1 merely incorporates into the court's findings a stipulation of the parties containing seventeen paragraphs. The material findings follow:

"FINDING No. I.

. . . . . . . . . . . . . . .

"6. That block 57 of Independence city is bounded as follows: On the north by Main street, on the east by Ninth street, on the south by Maple street, and on the west by Tenth street, and has a 20-foot alley running east and west through it.

"7. That Main street north of block 57 is 100 feet wide, and is paved 30 feet wide, with 35 feet of parking reaching from the curb line at the paving to the lot line.

"8. That Ninth street, east of block 57, is 100 feet wide, with 40 feet of pavement, and 30 feet of parking on each side, reaching from the curb line to the lot line.

"9. That lying directly east of block 57 is block 56, with a 20-foot alley extending through it from east to west. Main street lies to the north of block 56, and is paved the full width, and that block of Main street on both sides of the street is a business street and used for business purposes.

"The south half of block 56 is occupied by three residences, and a filling station is located on the southeast corner of that block.

"10. Immediately north of block 57 on the north side of Main street is block 40, with a 20-foot alley extending through it from east to west. The south half of block 40 is occupied for residence purposes, the improvements ranging in cost from $5,000 to $15,000 for each property, there being five residence properties on said half block, and said block is in the business zone.

"11. That block 57, where plaintiff's property is located, is occupied wholly for residence purposes, and the north half of the block fronting on Main street is occupied by five residences, the improvements ranging in value from $4,000 to $15,000 each, for residence purposes. That plaintiff's property for business purposes is worth $13,250.

"12. The south half of block 57, fronting on Maple street, is occupied by two residences, one located on the southwest corner of the block, of the value of $35,000, and one located on the southeast corner of the block of the value of about $20,000.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

### Finding No. II.

"The court finds that the property in question, located at the corner of Main and Ninth streets, one block south of the Prairie Oil and Gas Company's office building, also immediately across the street west from block 56, on the northwest corner of said block is located the Stafford Grocery store, a three-story brick building; that said property is located a half block west and across the street from the Booth hotel, a six-story brick building; that it is situated just two blocks west of the center of Pennsylvania avenue and Main street, two of the principal business streets of the city; that the said property is situated one block west and one block south of the post office of said city, and one block west and one block south of the Booth theater, the largest and most modern picture house in said city; that said property is situated one block west and across the street from the Masonic Temple, a three-story building; that said property is also situated two blocks west and a block south of the corner of Myrtle street and Pennsylvania avenue, at which corner is located the Citizens First National Bank building, a six-story concrete building with brick and terra cotta facing, and opposite and across the street north of said bank building is located the Commercial National Bank building, a six-story brick and concrete building, with terra cotta facing, which two buildngs are

the largest general office buildings in said city; that said property is located three blocks west and a block south of the city hall of said city, and three and a half block west and a half block south of the district courthouse in said city.

"FINDING No. III.

"The original plan and plat of the city discloses that said lots owned by the plaintiff when laid out, making said lots 25 feet wide for business lots, facing north on said Main street in said business district.

"FINDING No. IV.

"The court further finds that the travel on Ninth street adjacent to said property on the east, and Main street on the north, is extremely heavy, and that the parking space both north and east of the property in question is constantly being used, both at night and day, by those who have business in the commercial or business district of said city.

"FINDING No. V.

"The court finds that placing said lots one, two and three, of block 57, outside of the zone for business purposes, such as is contemplated to be used by the plaintiff herein, is unreasonable and arbitrary."

By agreement of parties, maps, plats and photographs were considered as incorporated in the findings.

The case is admirably presented. When plaintiff's attorneys declared in the oral presentation of the case that practically at plaintiff's doorstep are the finest business buildings in the city of Independence, and among the finest in the state of Kansas, the attorneys for the city exhibited pride; and when the attorneys for the city said block 57 is one of the finest residence blocks in the beautiful city of Independence, the attorneys for plaintiff seemed ready to applaud. Indeed, there is only one matter, either of fact or of law, with respect to which the parties are not in complete accord, and that is the conclusion of fact expressed by the district court's finding No. V.

It will be observed that the findings refer to no business building west of Ninth street except the Prairie Oil and Gas Company's office building in the second block north of block 57. Except for a filling station on the southeast corner, the south half of block 56 is occupied by residences, and all blocks south of block 56 are residence blocks. The court's finding No. III is make-weight, and the court's findings II and IV disclose nothing of importance except adjacency to the business section of the city, and extent of traffic on Ninth and Main streets. In zoning the city for the purposes

for which zoning may be established, the city was obliged to locate zone lines, and the findings of fact considered in connection with the maps and photographs disclose no more basis for a charge of arbitrary conduct on the part of the city than for a charge of arbitrary conduct on the part of the court in taking three lots out of the corner of a residence block for a service station.·

Plaintiff says a dead line of business development was arbitrarily fixed across Ninth street east of his lots, and business expansion was permitted along Main street north of his lots, without cause or reason. These statements refute each other. The business district had spread southward and westward from a center of density until the edge touched a highly improved residence section at Ninth and Main streets. The city established the zone line so that expansion westward was limited on the south side of Main street, and was permitted on the north side. If the limitation was arbitrary, expansion on the north side was proper. If expansion on the north side was unreasonable, the limitation was proper. *Prima facie*, location of the line indicates consideration of the welfare of the city as a whole, and there is no finding that location of the line did not in fact represent the best judgment of the city based on careful consideration of the public and private interests affected.

It is not enough to avoid the ordinance that use of plaintiff's lots for the desired purpose is forbidden. One purpose of a zoning ordinance is to restrict use of city lots. There is nothing in the findings to indicate that a limitation was imposed on use of plaintiff's lots for the benefit of other property owners in the block, although impairment of use of lots for private residences may be considered in excluding business buildings from a particular district. There is nothing in the findings to indicate that a limitation was imposed on plaintiff's lots merely to conserve esthetic appearance of a section of the city, although the despoiling of a fine residential district by erection of incongruous structures may be taken into account in establishing zones. There is nothing in the findings to indicate the city had in mind capricious exclusion of service stations generally, and the zoning ordinance was enacted before plaintiff's exceedingly profitable opportunity presented itself. The catalogue of factors which may enter into the solution of the zoning problem is a long one. In order that a court may substitute its judicial judgment for the legislative judgment of the city, it is obliged

to find facts which demonstrate that the city's conduct departed from the realm of the reasonable and passed over into the realm of the arbitrary and capricious. In this instance the facts found are not sufficient for that purpose.

The recent decision of the supreme court of the United States in the case of *State of Washington, ex rel., v. Roberge* (Advance Opinion No. 29, Nov. 19, 1928) has no application to the present controversy. In that case there was no legislative determination that erection and maintenance of the proposed philanthropic home would be inconsistent with the health, safety, morals or general welfare. The zoning ordinance implied that construction and maintenance of the institution was compatible with the public interest, but owners of a limited quantity of land were given power uncontrolled by standard or rule to prevent the use. The court held the delegation of power was repugnant to the due-process clause of the constitution.

The judgment of the district court is reversed, and the cause is remanded with direction to deny the writ of mandamus and render judgment in favor of the city for costs.