No. 32,355

CITY OF NORTON, *Appellee,* v. VERN HUTSON, *Appellant.*

(46 P. 2d 630)

Opinion filed July 6, 1935.

*W. E. Mahin* and *D. P. Moyers,* both of Norton, for the appellant.

*Robert W. Hemphill,* of Norton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant was convicted in the police court of violating a zoning ordinance, and on appeal the same result followed in the district court. He now brings his case to this court for review.

The material facts were these: Norton is a city of the second class. In 1931 the city adopted a zoning ordinance regulating and restricting the establishment of commercial enterprises and related matters of no present concern. The city was divided territorially into zones or districts, in a fashion which has become familiar in

litigation. One of these was designated "business district," in which various industrial activities were forbidden, including—

"(12) Creamery, cream or produce-buying station or milk-distribution establishment other than distribution of milk in connection with a retail business."

There was a provision in the ordinance permitting "nonconforming uses," the substance of which was that any lawful use of property existing at the time the ordinance was adopted might be continued under limitations not necessary to be stated here.

In Norton city there is a public square, with business streets abutting on every side. On the street on the south side of the square and facing it there were three cream-buying stations established and in operation when the zoning ordinance was adopted in 1931.

On August 29, 1933, this defendant set about the establishment and operation of another cream-buying station on the same street and in the same block, which was in a "business district" as defined by the zoning ordinance.

For this violation of the zoning ordinance he was fined $5 and costs. Against this judgment, affirmed in the district court, he now raises questions of constitutional law, the gist of which is that the statute which confers upon the cities of this state the power to enact zoning ordinances violates fundamental principles of constitutional government. The contention is made that the state itself could not enact a valid statute granting the right to certain citizens to pursue an occupation or business and deny that right to other citizens. And what the state itself could not do, it cannot empower its cities to do. The second premise may be conceded, but is the first premise correct and sound? Dealing with the point concretely, cannot the state call a halt on the number of cream-buying stations which may be tolerated in the business section of a city? It is well understood that statutes and ordinances regulating and restricting the classes of business which may be conducted in cities are based on the state's police power. The constitutional provision that the state shall not deprive any person of his property without due process of law does not apply to mere regulatory limitations as to the use of his property. The police power of the state extends not only to regulations pertaining to health, safety and public morals but to the public convenience also. (*C. B. & Q. Railway v. Drainage Comm'rs*, 200 U. S. 561, 592.) However, we need not go afield

in a search for precedents on this particular phase of the question. The validity of our zoning statutes was sustained as against constitutional attack in *Ware v. City of Wichita,* 113 Kan. 153, 214 Pac. 99. Other cases sustaining the main features of city zoning ordinances are *West v. City of Wichita,* 118 Kan. 265, 234 Pac. 978; *State, ex rel., v. Wade,* 128 Kan. 646, 278 Pac. 1067; *Armourdale State Bank v. Kansas City,* 131 Kan. 419, 292 Pac. 745; *Hoel v. Kansas City,* 131 Kan. 290, 291 Pac. 780; *Simmonds v. Meyn,* 134 Kan. 419, 7 P. 2d 506; *Ford v. City of Hutchinson,* 140 Kan. 307, 37 P. 2d 39. See, also, *Euclid v. Ambler Co.,* 272 U. S. 365, 71 L. Ed. 303.

On the point that the ordinance discriminates in favor of persons whose property was devoted to some legitimate use before the ordinance was adopted by permitting the continuation of such "nonconforming" use, it must be noted that the statute back of the ordinance does that very thing. It reads:

"Ordinances passed under authority of this act shall not apply to existing structures nor to the existing use of any building, . . ." (R. S. 13-1103.)

Such discrimination is necessary if city zoning is to be undertaken at all—unless all "nonconforming" structures and uses are to be banned from zones created for the benefit of conforming uses. Such an alternative would ordinarily be too drastic for legislative or judicial countenance, although it has been done in Los Angeles, according to Williams on "The Law of City Planning and Zoning," page 201. In Metzenbaum's textbook, "The Law of Zoning," this subject is discussed thus:

"It is customary for zoning ordinances to provide that a then existing and used structure may continue to be employed for its then purpose, though its location and use may be at variance with, and not in conformity to, such respective zoning ordinances.

"Such exceptions are generally referred to and classified as 'nonconforming uses.'

"Obviously, it would be inequitable and an unnecessary destruction of building values, to even attempt to annul or prevent the use of then existing structures.

"However, it is the common rule for zoning ordinances to provide that such 'nonconforming uses' may not be extended, except to a limited degree, and may not be rebuilt or again so employed in the event of a destruction of a greater percentage of such a building.

"Some ordinances have quite detailed and specific provisions limiting the right of such 'nonconforming' uses.

"Within a period of another twenty years, a large number of such 'non-

conforming' uses will have disappeared, either through the necessity of enlargement and expansion, which invariably is forbidden or limited by ordinance, or by the owners realizing that it is unwise and uneconomic to be located in a district which probably is not suitable for the nonconforming purpose, or by obsolescence, destruction by fire or by the elements or similar inability to be used; so that many of these nonconforming uses will 'fade out,' with a resulting substantial and definite benefit to all communities." (p. 287.)

In *City of Aurora v. Burns,* 319 Ill. 84, it was held:

"A building zone ordinance is not discriminatory merely because it permits a building already erected and devoted to a prohibited use to be continued in such use after the passage of the ordinance, such use being lawful at the time the ordinance was passed, as the exception is based upon a reasonable classification, and it would be unjust to deprive an owner of property of the use to which it was lawfully devoted when the ordinance became effective." (Syl. ¶ 3.)

In the later case of *Minkus v. Pond,* 326 Ill. 467, the Illinois supreme court tacitly stated that the City of Aurora case superseded earlier Illinois decisions, but the general principles of zoning as therein stated were reaffirmed.

In *Spencer-Sturla Co. v. Memphis,* 155 Tenn. 70, the defendant was fined for a violation of a city zoning ordinance which forbade the maintenance of a mortuary in a district zoned for residential purposes. The ordinance, like the Norton city one under present consideration, authorized the continuation of the use of the land in operation at the time of the adoption of the ordinance although such use did not conform to its provisions. The supreme court held:

"Provision authorizing the continuation of the use of land in operation at the time of the adoption of an ordinance creating such district, is not an unreasonable discrimination in favor of the nonconforming uses in existence at the time the ordinance was adopted." (Syl. ¶ 8.)

In the opinion on this point the court said:

"We do not find that these provisions create an unreasonable discrimination in favor of the nonconforming uses in existence at the time the ordinance was adopted. (*Zahn v. Board of Public Works,* 195 Cal. 497, 234 Pac. 395; *City of Aurora v. Burns,* 319 Ill. 84, 149 N. E., 784; *Commonwealth v. Alger,* 7 Cush. 53; *Spector v. Building Inspector of Milton,* 250 Mass. 63, 145 N. E. 265.) The impracticability, if not impossibility, of prohibiting the continuation of a use to which land has already been devoted, is sufficient and reasonable basis for the apparent discrimination involved in the failure to make the ordinance retrospective. In many instances the existing uses are not permanent in their nature, and the principle of 'zoning' appears to be founded in an effort to so regulate the future physical development of a city

that the unrestricted congestion of traffic and housing will not increase or be repeated." (p. 88.)

In *Spector v. Building Inspector of Milton*, 250 Mass. 63, to an objection to a zoning ordinance which tolerated existing structures and uses in a zoned district while forbidding the erection of new buildings not in harmony with the zoning plan, the supreme judicial court said:

"There is nothing about the zoning by-law which denies to the petitioner the equal protection of the laws. The provision exempting from its prohibition of business or commercial uses existing buildings in district A and permitting additions, alterations or enlargements upon cause shown, are unobjectionable. A classification of this nature does not deny the equal protection of the laws. It is based upon sound distinctions. To exempt buildings already devoted to a use from a prohibition of such use of other buildings or buildings thereafter erected in a specified area is not unequal but lawful. (*Commonwealth v. Alger*, 7 Cush. 53, 103.) To permit alterations, enlargement, or replacement of such buildings stands on the same footing as the initial classification. (*Quong Wing v. Kirkendall*, 223 U. S. 59; *Welch v. Swasey*, 193 Mass. 364, affirmed in 214 U. S. 91; *Ayer v. Commissioners on Height of Buildings in Boston*, 242 Mass. 30, 32.)" (p. 70.)

Counsel for appellant cite cases and authorities which hold that city ordinances must be reasonable. Our own reports are replete with the same doctrine; and, indeed, this court has more than once stated that any unjust or unreasonable effect of a zoning ordinance on some particular situation is not beyond judicial redress (*Armourdale State Bank v. Kansas City*, supra); but we discern nothing unjust or unreasonable in the ordinance of the city of Norton as applied to the case before us.

The judgment is affirmed.