No. 40,648

Orion Ralph Spurgeon and Adeline May Spurgeon, *Appellants,* v. Board of Commissioners of Shawnee County, Kansas, Dean E. Yingling, Robert R. Jones and Paul Madden, Commissioners; Shawnee County Planning Commission, Chris Armstrong, J. H. Deurmyer, Jay Shidler, Clif Watson, P. G. Baird, Walter King, members of the Commission; Board of Zoning Appeals of Shawnee County, Kansas, Elroy Vilt, J. H. Deurmyer, Perry C. Wayman, Ed H. Grundeman and Kelly Lewis, members of the Board; Joseph M. Benson, Secretary of the Shawnee County Planning Commission; Joseph M. Benson, Secretary of the Board of Zoning Appeals of Shawnee County, Kansas, *Appellees.*

(317 P. 2d 798)

Opinion filed November 9, 1957.

*David H. Fisher,* of Topeka, argued the cause and *Donald Patterson,* of Topeka, was with him on the briefs for the appellants.

*Maurice D. Freidberg,* of Topeka, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

Hall, J.: This is an appeal from an order of the district court of Shawnee County affirming the enforcement of a Shawnee County zoning resolution as it applies to appellants and permanently en-

joining appellants from using their property in violation of the resolution.

Pursuant to the provisions of G. S. 1955 Supp., 19-2927 through 19-2936 the Board of County Commissioners of Shawnee County caused to be adopted on August 7, 1953, a zoning resolution recommended by the Shawnee County Planning Commission and the Board of Zoning Appeals of Shawnee County.

This resolution was entitled "Shawnee County Zoning Plan." Under the provisions of the statute this resolution provided for zoning regulation within the unincorporated territory lying within three miles of the city of Topeka, a city of the first class in Shawnee County.

The resolution divided the area into six districts, to wit: two classes of residential, local shopping, commercial, light industrial and heavy industrial. It declared auto wrecking yards and the storing or locating of trailers as nonconforming uses in residential districts. The resolution further provided that auto wrecking yards and trailers shall be discontinued or removed within two years from the effective date of the resolution. It then provided that the Board of County Commissioners may, by special permit, authorize the location of certain buildings or uses in any district from which they are otherwise prohibited by the resolution. Trailers were included in the list eligible for special permits, but not auto wrecking yards.

The appellants are the owners of a tract of land purchased in 1950 which lies in the three mile zone and is designated by the resolution as within a residential district.

On this land the appellants are engaged in the business of auto sales, repair and wrecking. After acquiring it, they made a number of valuable improvements in addition to the general value of the business.

Upon publication of the notice to discontinue the nonconforming uses of junk yards, auto wrecking and trailers, as provided by the resolution, the appellants made application for a change in zoning from "residential" to "heavy industrial" which would have permitted the continuance of their business. The application was denied, and in due course the matter was tried to the district court of Shawnee County.

The court made the following findings of fact and conclusions of law:

"2. The plaintiffs are the owners of a tract of land of approximately 4.85

acres in area, the use of which under the Shawnee County Zoning resolution is the subject of this action. This tract of land is quite hilly and uneven and has considerable rock running through it.

"3. Plaintiffs tract of land is located south and east of the city limits of the city of Topeka. The north boundary is 320 feet long and lies along East Fifteenth Street. It is bounded on the south by Drake sub-division; on the east by Branner Street and on the west by a tract of vacant land. It is eight city blocks from Fifteenth Street and Kansas Avenue. The city limits of Topeka is 100 feet north of the north edge of Fifteenth Street and approximately 400 feet west of the west line of plaintiffs' tract.

"4. The surroundings of plaintiffs' tract are as follows: To the north across the street are four houses in poor condition; to the west is the tract of vacant land, a road and Shunganunga Creek, which is the boundary line of the city; to the south are vacant lots and residences, and across the street to the east are vacant lots.

"5. The improvements on the land consist of a concrete block building used for a body and fender shop or repair shop, one frame building used as a shop and for storage, miscellaneous storage sheds, fences and driveways. The total value of the improvements are approximately $18,000.00 and the value of the land is $7,000.00.

"6. The tract of land and improvements thereon are being used by the plaintiffs for the business of used car sales, auto wrecking and automobile repairing. This use has been continuous and uninterrupted since April 11, 1950. Plaintiffs wreck and rebuild autmobiles using parts from wrecked cars stored on the premises and sell rebuilt cars on the premises. They also repair cars on the premises. About 175 wrecked cars or portions thereof are on the premises at all times. Some cars remain as long as two or three years before the pieces are finally junked. They have 3 to 4 employees and operate 3 trucks which are kept at the lot. As many as 3 or 4 wrecked cars a day are brought in sometimes and are cut up by oxygen and acetylene torches.

"7. On August 13, 1953, the effective date of the county zoning resolution, plaintiffs had on hand automobile parts from wrecked automobiles, usable as replacement parts, in the value of approximately $5,000.00. Other parts of cars on hand not usable as replacement parts were worth approximately $2,500.00 as scrap metal. The automobile parts usable for replacement would be worth much less than $5,000.00 if not permitted to be held and sold as needed for such replacement parts. The estimated cost of moving the wrecked cars and automobile parts on hand on August 13, 1953, was $4,500.00, and time required for such removal is approximately four months. The number of wrecked cars and the quantity of replacement parts on hand at the date of trial were approximately the same as on August 13, 1953.

"8. Plaintiffs' property was placed in a residential district by the county zoning resolution, as was all property contiguous to it. To the south and east of the tract is the area known as Highland Park, which is essentially residential except for occasional areas zoned as neighborhood shopping. The zoning in the city of Topeka adjacent to this tract is light and heavy industrial. Shunganunga Creek is a natural barrier and boundary line for zoning districts as is

Fifteenth Street on the north. The south side of Fifteenth Street within the City limits is zoned residential and light industrial.

"9. The use of plaintiff's property for auto wrecking . . . is a nonconforming use under the Shawnee County Zoning Resolution and particularly under Section 10 of that resolution.

"10. Sub-section G of Section 10 of the Shawnee County Zoning Resolution reads as follows:

'The non-conforming use of a building or premises for the purpose of dismantling or wrecking automobiles and other vehicles of any kind, or for the purpose of storing junk, scrap iron and scrap material including dismantled and wrecked automobiles of other vehicles, and which is located in the R-1 or R-2 Residential District, shall be discontinued and the building or premises thereafter devoted to a use permitted in the district in which such building or premises is located, within two (2) years from the effective date of this resolution.'

and under the provisions of this sub-section the use of plaintiffs' property for the purpose of dismantling or wrecking automobiles and other vehicles of any kind, or for the purpose of storing junk, scrap iron and scrap material including dismantled and wrecked automobiles or other vehicles, should have been discontinued on August 13, 1955.

"11. Two years is a reasonable length of time within which to require a discontinuance of the prohibited uses mentioned in sub-section C of Section 10 of the Shawnee County Zoning Resolution considering the nature of the use, and the plaintiffs' investment in improvements devoted to those uses.

"12. The Board of County Commissioners did not act arbitrarily or capriciously in adopting the Shawnee County Zoning Resolution.

"CONCLUSIONS OF LAW

"1. The Shawnee County Zoning Resolution was adopted pursuant to the provisions of Chapter 239, Laws of 1951 as amended (Sec. 19-2927 to 19-2936, G. S. Supp. 1955), and has been in full force and effect since August 13, 1953. Said resolution is legal and valid.

"2. The use of plaintiffs' property for the purpose of dismantling or wrecking automobiles and other vehicles of any kind or for the purpose of storing junk, scrap iron and scrap material including dismantled and wrecked automobiles or other vehicles has at all times since August 13, 1955, been unlawful and has constituted a nuisance.

"3. Plaintiffs and each of them should be permanently enjoined from using the property described in plaintiffs' petition for any of the above purposes.

.    .    .    .    .    .    .    .    .    .    .

"IT IS THEREFORE BY THE COURT ORDERED, ADJUDGED AND DECREED that the plaintiffs be and they are hereby denied the relief prayed for in their petition and that the plaintiffs be and each of them are hereby permanently enjoined from using the property described in plaintiffs petition for the purpose of dismantling or wrecking automobiles and other vehicles of any kind, or for the purpose of storing junk, scrap iron and scrap material including dismantled and wrecked automobiles or other vehicles.

"It Is Further Ordered and Decreed that plaintiffs' motion for a new trial be and the same is hereby overruled and that the costs of this action be and they are hereby taxed to the plaintiffs."

The appellants make six specifications of error.

The regularity of the adoption of the resolution is not questioned.

Appellants first raise the question as to whether the Board of County Commissioners selected the proper statute for zoning property within the county and urge that the county should have selected another statute which did not provide for the elimination of nonconforming uses.

The power to zone within the counties of Kansas is a relatively new one. The laws are found in Article 29, Chapter 19, General Statutes of Kansas of 1949 as amended. Prior to 1953 the legislature had provided two plans for county zoning. Sections 19-2901 to 19-2913 incl., provide a plan for zoning within any township in a county which lies outside the limits of any incorporated city. This law now applies to all counties over 75,000 population. Sections 19-2914 to 19-2926 incl., provide for a county wide plan of zoning. Under recent amendments this plan may be used in counties between 10,000 and 200,000 population.

In 1951 the legislature added a third plan, sections 19-2927 to 19-2936 incl., which provide for zoning of any county having first or second class cities and not operating under the provisions of the county zoning law (19-2914, *et seq.*). Under this law the zoning regulations are limited to the unincorporated territories lying within three miles of the city. This law also provides in 19-2930:

". . . The powers of this act shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted, except that reasonable regulations may be adopted for the gradual elimination of nonconforming uses."

The other two plans do not provide for the gradual elimination of nonconforming uses. Section 19-2919 did so provide until amended in 1953.

Each of these three plans has distinguishing features and is independent of each other. Any county may choose the plan most suitable to its particular need.

In this case the Board of County Commissioners of Shawnee County chose the plan provided in 19-2927, *et seq.* Appellants cannot be heard to complain another should have been chosen notwithstanding the fact the plan so chosen was the only one which provided for the gradual elimination of nonconforming uses.

It is the next contention of the appellants that the Board of County Commissioners acted in an arbitrary, capricious and unreasonable manner in failing and refusing the appellants the right to continue their business on real estate which they had owned prior to the enactment of the zoning resolution and, particularly, in discriminating against auto wrecking yards by refusing them any right to special permit.

These and similar objections to zoning ordinances have been previously before this court. Most of the cases have arisen under the city zoning laws but the same principles are involved and the law of these cases would be applicable to the more recent county zoning resolutions.

The leading case is *Ware v. City of Wichita,* 113 Kan. 153, 214 Pac. 99. The facts of that case were somewhat similar to the case at bar. The court held that cities may create reasonable zoning districts and prohibit the construction of certain classes of buildings within the districts. Such ordinances are a valid exercise of the police power and do not violate any provision of state or federal constitutions.

This case has been followed and quoted in many subsequent cases and it would serve no purpose to quote it at length here. (*Armourdale State Bank v. Kansas City,* 131 Kan. 419, 292 Pac. 745; *Hoel v. Kansas City,* 131 Kan. 290, 291 Pac. 780; *Ford v. City of Hutchinson,* 140 Kan. 307, 37 P. 2d 39.)

In a later case, *West v. City of Wichita,* 118 Kan. 265, 234 Pac. 978, the court said:

". . . When once the power to zone and to restrict uses of property in designated zones is recognized (and that is settled in this state by the Ware case), then the particular classification for use made by the ordinance ought not to be set aside without substantial reason, specifically applicable thereto. . . .

". . . In so far as the authority of the city to pass a zoning ordinance making restrictions upon the use of property in certain designated districts, that question is not open to controversy. It was settled by the decision of this court in *Ware v. City of Wichita,* supra. . . ." (pp. 266 & 267.)

See, also, *City of Norton v. Hutson,* 142 Kan. 305, 46 P. 2d 630.

Notwithstanding that zoning is a valid use of the police power, subsequent cases made it clear, as appellants contend, that the courts do have authority in a proper proceeding to inquire into the facts of a specific case to determine whether, as to specific property, the ordinance is reasonable. (*City of Wichita v. Schwertner,* 130 Kan. 397, 286 Pac. 266.)

In making this inquiry it is not enough to avoid the ordinance because the use of property for a desired purpose is forbidden. Furthermore, the court may not substitute its judicial judgment for the legislative judgment of the city, rather the court is obliged to find facts which demonstrated that the city's conduct departed from the realm of the reasonable and passed over into the realm of the arbitrary and capricious (*Heckman v. City of Independence,* 127 Kan. 658, 274 Pac. 732).

Also, whether or not a certain place constitutes a nuisance is a question of fact to be determined from the evidence. If there is evidence sufficient to support the finding that finding will not be disturbed. (*State, ex rel., v. Wade,* 128 Kan. 646, 278 Pac. 1067; *Simmonds v. Meyn,* 134 Kan. 419, 7 P. 2d 506.)

On the matter of nonconforming uses this court said in *City of Norton v. Hutson,* supra, Syllabus 1:

"A city zoning ordinance provided that structures and business establishments which existed at the time it was adopted might be continued although they did not conform to the provisions of the ordinance. Such nonconforming structures and uses did not vitiate the ordinance nor the statute which sanctioned it; and a conviction for a violation of the zoning ordinance by defendant who undertook to establish and operate a business at variance with its terms was proper, although similar business theretofore lawfully established was specifically permitted by its terms to continue after the ordinance took effect."

In the case at bar there is evidence sufficient to sustain the court's findings that the Board of County Commissioners did not act arbitrarily, capriciously or unreasonably in adopting the resolution or in its application to the appellants. Under these circumstances we cannot substitute our judgment and hold contrariwise.

As harsh as the effect may be on the appellants' business there is no unlawful discrimination against them. The fact is that the resolution treated all auto wrecking businesses alike within the three mile area. Thus the classification was reasonable and well within the rules laid down by the above authorities.

Appellants state that the failure to provide for special permits to auto wrecking yards is equivalent to "spot zoning" and, therefore, unreasonable. In *Duggins v. Board of County Commissioners,* 179 Kan. 101, 293 P. 2d 258, this court held that such special permits under the county zone plan did not constitute "spot zoning."

Appellants call our attention to many other cases including a recent one decided by this court (*Hudson Properties, Inc. v. City*

*of Westwood,* 181 Kan. 320, 310 P. 2d 936) wherein an examination was made as to the validity of a city ordinance. The case is distinguishable. The ordinance in question was invalid because it failed to establish a uniform standard for its application. The court held the ordinance was an attempt to confer arbitrary power on the governing body of the city. The standard here is uniform in its application to all businesses coming within the various classifications.

The most important point raised by appellants, and one of first impression here, is the reasonableness of the resolution eliminating appellants' business within a two year period. Appellants state the question:

"May a zoning resolution provide for the mandatory elimination of a nonconforming use within a reasonable time, and if so, is the provision here under consideration a reasonable one."

In this connection they contend the resolution violates the fifth and fourteenth amendments of the Constitution of the United States.

The fifth amendment is really not involved. It is a limitation upon powers of the federal government but is not a limitation upon the powers of the states. (*State, ex rel., v. Kansas City,* 125 Kan. 88, 262 Pac. 1032, and authorities cited therein.) It is the fourteenth amendment with the due process clause which is the basis for the claim of unconstitutionality.

Although zoning measures generally were upheld throughout the country it was 1926 before final judgment was rendered by the United States Supreme Court on the applicability of the federal constitution to zone legislation. In *Euclid v. Ambler Co.,* 272 U. S. 365, 71 L. Ed. 303, 47 S. Ct. 114, 54 A. L. R. 1016, the constitutionality of a zoning ordinance was challenged on the grounds that it violated the fourteenth amendment and was unreasonable and confiscatory. The court upheld zoning legislation on the grounds that it was an exercise of the police power of the state designated to promote safety, health and public welfare.

In 1923 our court in *Ware v. City of Wichita,* supra, had sustained a zoning ordinance on the same grounds. *Euclid v. Ambler Co.,* supra, was cited and followed in *City of Norton v. Hutson,* supra.

Another leading federal case was *Hadacheck v. Los Angeles,* 239 U. S. 394, 60 L. Ed. 348, 36 S. Ct. 143.

The constitutionality of zoning laws has long been a settled question as far as the fourteenth amendment is concerned.

The first zoning regulations throughout the country did not pro-

vide for the mandatory elimination of nonconforming uses. There was usually a restriction on expansion of nonconforming uses. The underlying theory was that these nonconforming uses would eventually disappear.

In recent years regulations providing for the amortization or gradual elimination of nonconforming uses have been passed in a number of cities and states and have been upheld by state and federal courts.

In 1929 two cases were decided by the Supreme Court of Louisiana involving the constitutionality of a provision requiring the elimination of existing nonconforming uses. In both cases the court had under consideration a zoning ordinance of the city of New Orleans which contained a provision that all businesses in operation within a certain area must be liquidated within one year from the passage of the ordinance. The court upheld the ordinance in both cases (*State v. McDonald*, 168 La. 172, 121 So. 613; *State v. Jacoby*, 168 La. 752, 123 So. 314).

An appeal was taken to the United States Supreme Court in the McDonald case and certiorari was denied (280 U. S. 556, 74 L. Ed. 612, 50 S. Ct. 16).

A leading case is *City of Los Angeles v. Gage*, 127 C. A. 2d 442, 274 P. 2d 34. There the zoning ordinance was changed and a provision adopted requiring certain nonconforming uses to be discontinued within five years. The court said:

"Amortization of nonconforming uses has been expressly authorized by recent amendments to zoning enabling laws in a number of states. Ordinances providing for amortization of nonconforming uses have been passed in a number of large cities. The length of time given the owner to eliminate his nonconforming use or building varies with the city and with the type of structure. (p. 455.)

". . . It was not and is not contemplated that pre-existing nonconforming uses are to be perpetual. (*State ex rel. Miller v. Cain*, 40 Wn. 2d 216 [242 P. 2d 505].) The presence of any nonconforming use endangers the benefits to be derived from a comprehensive zoning plan. Having the undoubted power to establish residential districts, the legislative body has the power to make such classification really effective by adopting such reasonable regulations as would be conducive to the welfare, health, and safety of those desiring to live in such district and enjoy the benefits thereof. There would be no object in creating a residential district unless there were to be secured to those dwelling therein the advantages which are ordinarily considered the benefits of such residence. It would seem to be the logical and reasonable method of approach to place a time limit upon the continuance of existing nonconforming uses, commensurate with the investment involved and based on the nature of the

use; and in cases of nonconforming structures, on their character, age, and other relevant factors.

"Exercise of the police power frequently impairs rights in property because the exercise of those rights is detrimental to the public interest. Every zoning ordinance effects some impairment of vested rights either by restricting prospective uses or by prohibiting the continuation of existing uses, because it affects property already owned by individuals at the time of its enactment. (*People v. Miller*, 304 N. Y. 105 [106 N. E. 2d 34, 35].) In essence there is no distinction between requiring the discontinuance of a nonconforming use within a reasonable period and provisions which deny the right to add to or extend buildings devoted to an existing nonconforming use, which deny the right to resume a nonconforming use after a period of nonuse, which deny the right to extend or enlarge an existing nonconforming use, which deny the right to substitute new buildings for those devoted to an existing nonconforming use—all of which have been held to be valid exercises of the police power. . . ." (p. 459.)

See, also, *Standard Oil Co. v. City of Tallahassee*, 181 F. 2d 410. Certiorari denied (340 U. S. 892, 95 L. Ed. 647, 71 S. Ct. 208).

The cases are collected in a recent annotation, 42 A. L. R. 2d. 1146. 58 Am. Jur., Zoning, §148.

There is a lack of accord among state decisions on the power to gradually eliminate nonconforming uses. We believe the statute enacted in 1951, Section 19-2930, controls our direction in Kansas.

In an early case (*City of Norton v. Hutson*, supra) this court indicated its disapproval of the elimination of all nonconforming uses. The court said:

"On the point that the ordinance discriminates in favor of persons whose property was devoted to some legitimate use before the ordinance was adopted by permitting the continuation of such 'nonconforming' use, it must be noted that the statute back of the ordinance does that very thing. It reads: 'Ordinances passed under authority of this act shall not apply to existing structures nor to the existing use of any building, . . .' (R. S. 13-1103.)

"*Such discrimination is necessary if city zoning is to be undertaken at all —unless all 'nonconforming' structures and uses are to be banned from zones created for the benefit of conforming uses. Such an alternative would ordinarily be too drastic for legislative or judicial countenance, although it has been done in Los Angeles, according to Williams on 'The Law of City Planning and Zoning,' page 201, . . .*" (p. 307.) (Italics supplied.)

This case was decided in 1935. In 1939 the legislature provided for the gradual elimination of nonconforming uses in the county plan of zoning (Section 19-2919). In 1953 this provision was deleted from Section 19-2919 but was made a part of the new county zoning plan in Section 19-2930.

Early doubts such as those expressed in the Hutson case are

unjustified when considered in the light of subsequent development of the law. The constitutionality of provisions such as Section 19-2930 as a proper exercise of the police power has been determined insofar as the fourteenth amendment is concerned.

No question is raised in this appeal as to whether or not the provision contravenes any section of the Kansas constitution.

The remaining question before us is the reasonableness of that part of the regulation which provided that the appellants' business is to be eliminated within two years.

The authorities cited above are in point. The determination of reasonableness varies according to the facts and circumstances of the individual case. (*Euclid v. Ambler Co.,* supra; *Hadacheck v. Los Angeles,* supra; *State v. McDonald,* supra; *State v. Jacoby,* supra; *Standard Oil Co. v. City of Tallahassee,* supra; and the annotation 42 A. L. R. 2d 1146.)

In the case at bar the district court found that "two years is a reasonable length of time within which to require a discontinuance of the prohibited uses mentioned in sub-section C of Section 10 of the Shawnee County Zoning Resolution considering the nature of the use, and the appellants' investment in improvements devoted to those uses." There is evidence sufficient to support this finding. We may not substitute our judicial judgment for that of the county on the two year period of limitation unless we find facts which demonstrate that the county departed from the realm of the reasonable and passed over into the realm of the arbitrary and capricious (*Heckman v. City of Independence,* supra). An examination of the record here does not show facts sufficient for that purpose.

The judgment is affirmed.