No. 45,874

Union Quarries, Inc., and Magdalen E. Tobin, *Appellees*, v. The Board of County Commissioners of Johnson County, Kansas, and The Zoning Board of Aubry Township, Johnson County, Kansas, *Appellants*.

(478 P. 2d 181)

Opinion filed December 12, 1970.

*Marion W. Chipman,* special assistant county attorney, argued the cause, and *James W. Bouska,* county attorney, and *Lyndus A. Henry,* county counselor, were with him on the brief for the appellants.

*Robert F. Bennett,* of Bennett, Lytle and Wetzler, of Prairie Village, argued the cause and was on the brief for appellee Union Quarries, Inc.

*David R. Gilman,* of Overland Park, was on the brief for appellee Magdalen E. Tobin.

The opinion of the court was delivered by

HARMAN, C.: This is an action seeking declaratory judgment of property rights under zoning regulations sought to be applied to plaintiffs' property and for injunctive relief against interference with the property. Plaintiffs prevailed and defendants have appealed.

The record reveals the following: In 1949 plaintiff Magdalen E. Tobin and her husband, Patrick Tobin, acquired property near Stanley in Aubry township, Johnson county, Kansas, for use as a rock quarry. Thereafter, and until May, 1961, Mr. Tobin conducted a small rock quarrying operation on the premises, selling rock to neighboring farmers and others and to the city of Olathe. During this period Mr. Tobin would employ from one to five persons to assist him in the operation. On May 31, 1961, the Tobins leased the property for quarrying purposes to the Union Construction Company for a period of five years with option to renew for two like periods. Union carried on substantial quarrying, selling a large volume of rock, until October, 1963, at which time it removed its quarrying and crushing equipment from the premises. It left thereon a highloader and about 20,000 tons of crushed rock. It had other quarrying locations where it used its portable quarrying and crushing equipment as the demand for rock required. Mr. Tobin died January 5, 1965. On May 18, 1965, Mrs. Tobin commenced an action against Union in the Johnson county district court for cancellation of the lease on the ground of abandonment. This suit was dismissed with prejudice on August 15, 1965. On January 1, 1966, Union Construction assigned its interest in the lease to plaintiff Union Quarries, Inc., who in turn subleased to J. A. Tobin Construction Company, which immediately commenced to quarry rock in larger volume and intensity than had been initially conducted on the premises.

In 1959 Aubrey township enacted certain zoning regulations which were approved by the Board of County Commissioners of Johnson county. These regulations provided for three separate use districts: Residence, retail business and light industrial, and heavy industrial. The Tobin property was in a residential area. The business of rock quarrying was designated under retail business and light industrial. Section 13 of these regulations recognized their inapplicability to nonconforming uses then in existence and contained this further proviso:

"When a non-conforming use itself has been discontinued for a period of six months, it shall not be reestablished and future use shall be in conformity with the provisions of this enactment notwithstanding the purpose for which the premises were erected or used."

On April 16, 1966, the zoning board of Aubry township adopted a resolution finding the Tobin property was zoned for residential use and that its nonconforming use as a rock quarry had been lost. The board further found such use was in violation of its zoning regulations and it requested the Johnson county board of commissioners to take appropriate action to enforce the zoning regulations and prevent continuation of a rock quarrying business on the property. On April 20, 1966, plaintiffs appealed from the township board action to the Johnson county board of commissioners.

On June 16, 1966, the board of county commissioners conducted a hearing on the matter. Plaintiffs received due notice of and appeared at this hearing. A stenographic record of the proceedings was kept. The board found that plaintiffs had lost the nonconforming use by discontinuance thereof for a period of more than six months, and that their property was being used in violation of the township's zoning regulations. Plaintiffs then commenced this suit.

The trial court held a full *de novo* hearing. Its ultimate findings and conclusions on contested issues were that Aubry township was empowered by statute to enact Section 13 of its zoning regulations; that the board of county commissioners, as an administrative body, was not authorized to make a binding decision that a nonconforming use had been lost by discontinuance; the trial court's jurisdiction was not limited to a review of the evidence presented to the board of county commissioners to determine whether the board's action was reasonable; under the provisions of K. S. A. 19-2912 the board has authority to maintain suits in a court of competent jurisdiction to enforce zoning regulations and to abate nuisances maintained in

violation thereof and its remedy for determination of the loss of non-conforming use was by filing such a suit; and that the provisions of our declaratory judgment act (K. S. A. 60-1701) authorize plaintiffs to bring the type of action they filed. The court further found plaintiffs had not discontinued the nonconforming use so as to lose it; that they had not unlawfully enlarged or extended it, and the court rendered judgment accordingly. The court did enjoin operation of an asphalt plant which had at one time been in use on the premises after they had been zoned.

Defendants have appealed from the judgment adverse to them. Plaintiffs have cross-appealed from the ruling that Aubry township had authority to enact the quoted proviso in Section 13 of its zoning regulations. We first consider defendants' appeal.

Our legislature has enacted three separate sets of statutes authorizing counties to zone (see *Spurgeon v. Board of Commissioners*, 181 Kan. 1008, 317 P. 2d 798). The parties here agree the zoning action in question was undertaken pursuant to and must be governed by the provisions of K. S. A. 19-2901 to 19-2913 inclusive. This set of statutes contains no provision for amortization of nonconforming uses as does that which was the subject of consideration in *Spurgeon*; however, for purposes of discussion at this point, we assume, without deciding, that the zoning body here had authority to enact regulations providing for the voluntary loss by the owner of a nonconforming use, such as contained in Section 13.

Appellants contend the board of county commissioners has the power to hear evidence and to make determinations as to whether a nonconforming use has been altered, discontinued, abandoned or enlarged upon, subject only to review by the district court under K. S. A. 19-2913. They cite the familiar rule that upon such review the court may not substitute its judgment for that of the administrative agency but is limited to determining whether the action was reasonable and lawful. They assert the only issue before the trial court was the reasonableness of the board's order declaring loss of the nonconforming use and that to hold otherwise would result in the trial court becoming the zoning body. They argue the trial court had no power beyond that authorized by 19-2913.

Appellees, on the other hand, assert that whether a nonconforming use has been discontinued, abandoned or enlarged upon is a judicial question reserved for determination by a court of law and not by an administrative body; that there is no statutory procedure

prescribed for determination of the existence or nonexistence of a nonconforming use and the only way zoning bodies may challenge the maintenance of an alleged violation of zoning orders in such an instance is by bringing an action under K. S. A. 19-2912 in which event the court would make *de novo* factual inquiry.

K. S. A. 19-2912 provides:

"That any violation of any provision of this act shall be deemed to be a misdemeanor and punishable by a fine of not to exceed two hundred dollars for each offense and that each day's violation shall constitute a separate offense, and the county commissioners shall have the authority to maintain suits or actions in any court of competent jurisdiction to enforce the regulations adopted in accordance with the terms of this act, and to abate nuisances maintained in violation thereof."

K. S. A. 19-2913 provides:

"That any and all acts and regulations provided for or authorized by this act shall be reasonable and any person having an interest in property affected may have the reasonableness of any such act or regulation determined by bringing an action against the county commissioners in the district court in the county in which any such township is situated."

K. S. A. 19-2906 provides in part:

"That the zoning board shall have the power to determine, restrict and regulate the area within which trade, industries and recreations may be conducted . . . and to regulate and restrict the intensity of such uses and occupation outside the limits of incorporated cities; to prohibit uses, buildings, or structures, incompatible with the character of such district, respectively, and to present [prevent] additions to, and alterations or remodeling of, existing buildings or structures in such a way as to avoid or evade the restrictions and limitations lawfully imposed herein.

"In all orders, rules and regulations passed or adopted under authority of this act, due allowance shall be made for existing conditions, conservation and maintenance of property values, the direction of building development to the best advantage of the entire community and the uses to which property is devoted at the time of the enactment or making of any such order: *Provided, however,* That no action of the zoning board under powers conferred by this section shall be effective until approval by the county commissioners. . . ."

It is generally true, of course, except where amortizations are authorized and reasonably applied, that zoning ordinances may not operate to suppress or remove from a particular district an otherwise lawful business or use already established and maintained therein (58 Am. Jur., Zoning, § 148). K. S. A. 19-2908 and Section 13 of appellants' regulations recognize this principle. However, we are concerned here with an act of voluntary discontinuance— not with involuntary termination—and the question of which branch of government should make such a determination.

A court, of course, may not exercise as a matter of original jurisdiction a function properly committed by a zoning act to the sound discretion and judgment of a zoning board. The statutes in question contain no express authorization for the county zoning board to hold hearings and terminate existing nonconforming uses on the ground of discontinuance. In arguing that the board has this power by necessary implication in the broad general authority granted, appellants point to certain language used by this court in *Spurgeon v. Board of Commissioners,* supra. As indicated, that case did not deal with termination of a nonconforming use by voluntary discontinuance, although it did recognize the right of a zoning agency, under a more recent set of zoning statutes (now K. S. A. 19-2927 to 19-2936, incl.), to enact reasonable regulations amortizing nonconforming uses after a period of time and thus mandatorily to eliminate them. In any event statutory construction does not entirely resolve the problem. The ultimate issue here becomes one of a different type—which agency can properly determine whether a nonconforming use has been discontinued for a particular period of time? We have no precedent of our own directly upon the proposition. Resort to cases in other jurisdictions is not helpful, not only because of variance in statutory enactments but also because of the fact not all jurisdictions adhere to the separation of powers doctrine as we do in delineating permissible administrative and judicial actions. Under that doctrine we have always recognized a distinction between legislative and judicial functions cast, or sought to be cast, upon a particular governmental body (see *Gawith v. Gage's Plumbing & Heating Co. Inc.,* 206 Kan. 169, 476 P. 2d 966).

Is the function of determining whether a particular use of property has been discontinued a legislative or a judicial one? If legislative in character it should be left to the administrative agency, the zoning board, subject to the narrow dimensions of judicial review of such action. If judicial· or quasi-judicial it is properly one for the courts.

Generally speaking, the enactment and amendment of zoning regulations are primarily legislative rather than judicial in character. This is true because ordinarily they prescribe policy and are prospective in nature; they look to the future—the regulation of building development and uses of property in a manner to advance the public welfare (101 C. J. S., Zoning, § 1).

In *Gawith v. Gage's Plumbing & Heating Co. Inc.*, supra, on the subject of legislative and judicial functions we concluded:

"In determining whether an administrative agency performs legislative or judicial functions, the courts rely on certain tests; one being whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative body must make, and another being whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body.

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist, whereas legislation looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.

"In applying tests to distinguish legislative from judicial powers, courts have recognized that it is the nature of the act performed, rather than the name of the officer or agency which performs it, that determines its character as judicial or otherwise." (Syl. ¶¶ 2, 3, & 4.)

The term *discontinued* as used in zoning ordinances in connection with the termination of nonconforming uses has generally been interpreted to be synonymous with the term *abandoned* (1 Anderson, American Law of Zoning, § 6.61; 101 C. J. S., Zoning, § 198; anno. 18 A. L. R. 2d 729).

The term *abandonment* is one well known to courts. They have traditionally dealt in many ways with the question of determining, in retrospect, whether or not an abandonment, either of vested rights or property interests, has occurred under the particular facts and circumstances. Such a determination, as was said in *Gawith*, "declares and enforces liabilities as they stand on present or past facts" (Syl. ¶ 3) and does not involve the formulation of policy normally classified as a legislative function. Such a determination is not a prospective endeavor, rather it looks back and is made on past facts, and therefore must be deemed a judicial function. The district court ruled correctly that it had jurisdiction to determine in a *de novo* inquiry whether there had been a voluntary discontinuance of a nonconforming use for a particular period of time so as to result in its loss. Our holding is limited to this narrow situation.

We have examined the cases cited by appellants in support of a contrary view but find they relate to the adoption or amendment of zoning regulations or the issuance or refusal to issue a special use permit and not to the enforcement of a regulation of the par-

ticular type here involved. The fact the zoning board might have taken the initiative by going into district court itself to invoke sanctions for alleged violation of its regulations under K. S. A. 19-2912 does not militate against our holding—the district court would still have to determine as a fact in a *de novo* inquiry that there had been a discontinuance or abandonment of the nonconforming use before it imposed penalty.

A proceeding for declaratory judgment where controversy exists, as here, is a proper action for the determination sought. It follows that a property owner having the right to continue a nonconforming use is entitled to enjoin enforcement of a zoning action directed against such use.

We turn now to appellants' contention the trial court's finding that appellees had not discontinued the nonconforming use for six months is contrary to and not supported by evidence. We may not, of course, upon appellate review overturn a finding of fact supported by substantial credible evidence. As already indicated, the term *discontinued* as used in zoning regulations is equivalent to the term *abandoned*. Although we have not considered the term in connection with nonconforming uses, our cases have consistently held that abandonment of a property interest is the voluntary or intentional release of a known right (see *Chapman v. Continental Oil Co.*, 149 Kan. 822, 89 P. 2d 833). Other courts have applied the same definition in zoning cases, holding that abandonment of a nonconforming use ordinarily depends upon a concurrence of two factors: (1) An intention to abandon; and (2) an overt act, or failure to act, which carries the implication the owner does not claim or retain any interest in the right to the nonconforming use (8A McQuillin, Municipal Corporations, 3d ed. [1965 Rev.], § 25.192; 1 Anderson, American Law of Zoning, § 6.58). Mere cessation of use does not of itself amount to abandonment although the duration of nonuse may be a factor in determining whether the nonconforming use has been abandoned (101 C. J. S., Zoning, § 199).

In urging insufficiency of the evidence to support the court's finding appellants rely largely upon the filing by Mrs. Tobin of her petition against the initial lessee in which she alleged that for a period of two years the lessee removed all equipment, quarried no rock and did nothing to operate the quarry for the mutual benefit of the parties. This suit was dismissed within three months

after its filing. The crucial period is from May, 1963, to May, 1965, during which time a portable rock crusher and other equipment had been removed from the premises and there was no drilling, blasting or crushing of rock.

The evidence indicates that the modern method of quarrying is to use a portable rock crusher and transport it from site to site as needed to maintain stockpiles of crushed rock for whatever demand exists. The evidence further reveals when the initial lessee moved out it left a large stockpile of rock on the premises along with loading equipment. It also paid minimum royalty payments to Mrs. Tobin during the period as provided in the lease. Additionally, both Union and Mrs. Tobin sold small quantities of rock during the disputed period and a salesman quoted prices to various construction companies for crushed rock from the quarry until January, 1966. The property was initially purchased for a rock quarry. There was little in the evidence to suggest abandonment—to the contrary, it indicated the property has continually been held for the same purpose. The trial court's finding may not be disturbed on appeal.

Similarly appellants complain the evidence showed an impermissible enlargement of use of the quarry after 1965. They stress the fact the quarrying business began as a one or two man operation, then in 1965 was expanded both in volume and intensity substantially beyond the initial operation.

In 8A McQuillin, Municipal Corporations, 3d ed. [1965 Rev.], § 25.210, we find this:

"It is the general rule that the employment of modern and more effective instrumentalities, not previously used, in a nonconforming business or use or in connection with a nonconforming building does not constitute a prohibited expansion or enlargement of the business, use or building. In short, an owner can modernize facilities and employ improved instrumentalities in connection with a nonconforming building or use. However, the instrumentalities must be ordinarily and reasonably adapted to make the use in question available to the owner, and, moreover, the original nature and purpose of the undertaking must remain unchanged. Thus, for example, in mining, quarrying and similar types of uses, the introduction of new, mechanized devices and equipment is not an enlargement or extension of the use, but merely a more effective method of carrying it on."

In 101 C. J. S., Zoning, § 193, pp. 955-956, we find this elaboration:

"Generally speaking, the rule forbidding the enlargement or extension of a nonconforming use does not prevent an increase in the amount of use within the same area, so that a nonconforming use may be not only continued but also increased in volume and intensity. A nonconforming use is not limited

to the precise magnitude thereof which existed at the date of the ordinance, but may be increased by natural expansion, and a nonconforming use is not unlawfully enlarged or extended although the number of employees has almost doubled. The natural growth of a busines or an increase in the amount of business done is not a change from the nonconforming use permitted by the zoning ordinances."

Our examination of the evidence convinces us that, as found by the trial court in its well considered memorandum opinion, the use of the property remained the same as before. It underwent no fundamental change in quality. The case falls within the ambit of the foregoing rules. Like holdings in similar situations may be found at anno., 87 A. L. R. 2d 4, 19-22. The trial court did prohibit use of the premises as an asphalt plant.

Since we have concluded the judgment rendered is not vulnerable to the attacks leveled against it on direct appeal, and must be affirmed, we need not determine the additional issue raised by appellees upon cross-appeal in support of that judgment.

Judgment affirmed.

APPROVED BY THE COURT.