NOT DESIGNATED FOR PUBLICATION

No. 119,015

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF ATCHISON, KANSAS,
*Appellee*,

v.

ERNIE CARTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; MARTIN J. ASHER, judge. Opinion filed November 9, 2018. Reversed.

*Aaron C. Johnson*, of Summers & Johnson, P.C., of Weston, Missouri, for appellant.

*Robert D. Campbell*, of Campbell Law Office, P.A., of Atchison, for appellee.

Before MCANANY, P.J., PIERRON and LEBEN, JJ.

LEBEN, J.: The City of Atchison, Kansas, prosecuted one of its residents, Ernie Carter, for operating an automobile service station in a residential area, something forbidden by the City's zoning regulations. The district court convicted Carter of this misdemeanor offense and fined him $500.

Carter appealed, arguing that the evidence was insufficient and that the zoning regulation was unconstitutionally vague. We need not address the constitutional issue because we agree with Carter that the City did not prove the criminal charge they brought against him. See *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 658, 367 P.3d

282 (2016) (noting that an appellate court usually should avoid making unnecessary constitutional decisions).

We need only briefly describe the underlying facts to decide this appeal. Carter lives in a residential neighborhood zoned as R-2, meaning that either single-family or two-family homes could be built there. Next to his home, Carter built a three-bay garage. In 2012, he asked the City for a use permit to run an auto-repair business, but the City turned him down, noting the site's residential zoning.

The City got complaints of traffic around Carter's garage in 2015 and investigated. A city inspector concluded that Carter was repairing and servicing vehicles, so the City sent him a notice that he must not do so. But he didn't appear to change his practices, so the City brought a criminal charge against him.

What the City alleged in its criminal complaint was straightforward—Carter had illegally operated an "automobile service station" in a residential area:

> "That on February 28, 2016[,] and continuing through September 13, 2016, the said . . . Ernie Carter within the city limits of Atchison, Kansas[,] did then and there unlawfully operate a[n] automobile service station in/on a property zoned Residential-2 . . . in violation of the Zoning Ordinance of Atchison, Kansas . . . ."

The City might well have chosen to draw its charge differently. Its zoning regulations (adopted by ordinance) tell what may be done in two ways. First, each zoning district is explained, showing what uses are intended there. R-2 allows one- and two-family dwellings, not businesses, as its primary uses. Second, there's a detailed list of potential uses at the end of the zoning regulations that shows which uses are permitted in each district. The only business uses permitted in the R-2 district are daycare, lunch or dinner service, home occupations (like dress-making), and antique stores, though even

2

some of those uses may come with significant restrictions. So if Carter was running an auto-repair business, as the City's evidence suggested, he was violating the zoning regulations.

Instead of charging Carter with operating a business in a residential area, though, the City charged him specifically with operating an "automobile service station." All agree that the City's zoning regulations prohibit automobile service stations in residential neighborhoods, including Carter's R-2 location: the City's zoning regulations allow an "[a]utomobile service station" only in specific business and industrial zones. So the City's case would still have succeeded if its evidence had shown that Carter was running a service station out of his three-bay garage.

But the City couldn't do that: Using a common understanding of what an automobile service station is, Carter wasn't running one.

When we interpret a statute or ordinance, we give words their ordinary meanings. *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 850, 397 P.3d 1205 (2017). That's especially important when the government seeks criminal penalties for the violation of a statute or ordinance: Citizens must be able to understand what's prohibited. And there's an ordinary meaning to "automobile service station" that Carter's operation simply didn't meet—selling gasoline.

Whether we search modern dictionary definitions, our own memories of iconic service stations bearing signs of all the major oil companies, or Kansas legal opinions stretching back nearly a century, the common understanding of a service station is that it sells gasoline. And there are no gas pumps at Carter's garage.

Let's start with several dictionary definitions of "service station":

3

- "A gas station, especially one that services and repairs motor vehicles." American Heritage Dictionary 1602 (5th ed. 2011).
- "A retail establishment at which motor vehicles are refueled, serviced, and sometimes repaired." American Heritage Dictionary 1591 (4th ed. 2006).
- "[A] gas station," itself separately defined as "a retail station for servicing motor vehicles esp. with gasoline and oil." Merriam-Webster's Collegiate Dictionary 517, 1138 (11th ed. 2014).
- "[A] gas station, typically one having the facilities to provide automotive repairs and maintenance." New Oxford American Dictionary 1596 (3d ed. 2010).
- Webster's New World College Dictionary has two definitions, but the one specifically related to motor vehicles includes selling gas: "(1) a place providing maintenance service, parts, supplies, etc. for mechanical or electrical equipment (2) a place providing such service, and selling gasoline, oil, etc., for motor vehicles." Webster's New World College Dictionary 1328 (5th ed. 2014).

Common among all the definitions that specifically mention automobiles is selling gasoline. And the City charged Carter with operating an "automobile service station."

The City cites definitions from an earlier edition of Webster's New World Dictionary, noting the ones we've cited for "service station" as well as separate ones for "service" and "repair." Based in part on those definitions, the City then argues that "service" is broader than "repair," that a "station" is simply a place where service is performed, and that an "automobile service station" is therefore any place "where the installation of parts, ordinary maintenance, upkeep, and/or repairs are performed on automobiles." But the definitions for "service station" reference refueling or providing gasoline—and that's true even for the Webster's New World College Dictionary definition specific to motor vehicles.

4

These dictionary definitions correspond with our understanding of what makes an "automobile service station." They also correspond with the way the term has been used in Kansas appellate opinions.

The first reference came in a 1929 case, when the limits of zoning regulations were being developed. In *Heckman v. City of Independence*, 127 Kan. 658, 662-63, 274 P. 732 (1929), the Kansas Supreme Court upheld an Independence city ordinance prohibiting businesses in residential neighborhoods against a property owner who wanted to open a service station. The city had denied a permit to build what the property owner called a "master service station," to be used "for full service to automobiles and other auto vehicles; this service to include gas, oil, ignition, tires, auto wash, grease, battery service, and brake testing." 127 Kan. at 658-59.

Indeed, the tie between service stations and the sale of gasoline is strong enough that they have often been called "gasoline service stations." E.g., *Taco Bell v. City of Mission*, 234 Kan. 879, 888, 678 P.2d 133 (1984) (noting a lot "was zoned for a gasoline service station"); *Brizendine v. State*, 210 Kan. 241, 241, 499 P.2d 525 (1972) ("[A] gasoline service station . . . was burglarized."); *Rich v. City of Wichita*, 189 Kan. 323, 324, 369 P.2d 378 (1962) ("There is a gasoline service station at the northwest corner . . . ."). And many other cases have noted the connection between service stations and gasoline. E.g., *Plains Transp. of Kan., Inc. v. King*, 224 Kan. 17, 18, 578 P.2d 1095 (1978) (noting the delivery of 8,400 gallons of gas to "defendants' service station"); *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, 398, 524 P.2d 1165 (1974) ("It must be recognized that gallonage [number of gallons of gasoline sold] is a factor that is used by those concerned with the market value of a service station."); *Johnson v. Killion*, 178 Kan. 154, 155, 283 P.2d 433 (1955) (noting that one of the parties operated "numerous automobile service stations, including the sale of gasoline, liquid fuels, etc." in and around Wichita); *City of Overland Park v. McGregor*, No. 107,698, 2013 WL 1688936, at *1 (Kan. App. 2013) (unpublished opinion) (noting a driver's need

5

"to find an open service station to refuel"). These cases support the conclusion that in ordinary usage, a "service station" or an "automobile service station" sells gasoline.

So whether we rely on dictionary definitions, our own understanding, or the way the term has been used in cases from 1929 to the present, one of the things that *makes* a service station is that it sells gasoline. Carter didn't.

The City charged him criminally with operating an automobile service station. The government gets to choose how it charges a criminal case, but in the end it must prove what it charged. See K.S.A. 22-3419(1) (providing for a judgment of acquittal if the evidence isn't sufficient to prove the "crime[] charged in the complaint"). It didn't here. When the government's evidence is insufficient to prove the crime charged, the proper remedy is to reverse the conviction without sending the case back for retrial. See *State v. Fitzgerald*, 308 Kan. 659, 665-66, 423 P.3d 497 (2018); *State v. Scott*, 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007). We therefore reverse the district court's judgment.

\* \* \*

PIERRON, J., dissenting: I respectfully dissent from the majority's opinion that the business in this case is not an automobile service station because it does not sell gasoline. The majority lists a number of services that are often provided by automobile service stations. I do not believe that all of the listed services, including the sale of gasoline, must be provided before such a business can be found to be an automobile service station. The wording of the ordinance simply assumes that a business that focuses on automobile services is an automobile service station. I believe this definition is easily understood by the common automobile owner or automobile services provider. The ordinance is clear.

6